JUDGE STEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
SECURITIES AND EXCHANGE COMMISSION,

10 CIV 4270

10 Civ. _____ ( )

        Plaintiff,

      - against -

KENNETH IRA STARR, STARR INVESTMENT
ADVISORS, LLC, and STARR & COMPANY, LLC,

      Defendants

DIANE PASSAGE and COLCAVE, LLC

      Relief Defendants.
------------------------------------------------------------

**COMPLAINT**



RECEIVED
MAY 27 2010
U.S.D.C. S.D. N.Y.
CASHIERS

     Plaintiff Securities and Exchange Commission ("Commission") alleges the following against Defendants Kenneth Ira Starr ("Starr"), Starr Investment Advisors, LLC ("SIA"), and Starr & Company, LLC ("Starrco") (collectively, the "Defendants") and against Relief Defendants Diane Passage ("Passage") and Colcave LLC ("Colcave") (collectively, the "Relief Defendants").

## SUMMARY

    1.    This is an emergency action brought to halt an ongoing fraudulent scheme. Starr and SIA – an entity that Starr controls – provide investment advisory services to more than thirty high net-worth clients. In addition, Starr and Starrco – another entity that Starr also controls – provide advisory, accounting, tax preparation, business management, bill-paying, and "concierge" services to a larger but overlapping group of approximately 175 clients. Defendants have power of attorney or signatory authority over many bank and investment accounts belonging to their clients.

2.      Defendants have abused the signatory power that they hold over their clients' bank and investment accounts by misappropriating client funds for their own purposes, including to purchase a luxury $7.6 million Manhattan apartment for Starr.

3.      Between April 13 and April 16, 2010, Defendants transferred $7 million from the accounts of three SIA and Starrco clients. The transfers from the accounts of the three SIA and Starrco clients were not authorized. These funds were ultimately used on April 16, 2010, to purchase an apartment in which Starr and Passage reside. The owner of the apartment is Colcave, a limited liability company controlled by Starr.

4.      One of the clients whose funds Defendants misappropriated to purchase the apartment was Investor No. 1. On April 13, 2010, Defendants transferred $1 million out of a bank account belonging to Investor No. 1. Investor No. 1 complained and demanded that the money be refunded. On April 26, 2010, Investor No. 1 received a refund from Starr of the $1 million. The source of the $1 million, however, was money taken from the account of Investor No. 2. Defendants did not inform Investor No. 2 that money was being transferred from Investor No. 2's account to repay Investor No. 1.

5.      These unauthorized transfers in April 2010 were not the only instances where Defendants misappropriated client funds. Starting in August 2009, Defendants transferred approximately $1.7 million from the personal account of Investor No. 3 and from the account of a charity run by Investor No. 3. These were all unauthorized transfers. In April 2010, Defendants attempted to transfer an additional $750,000 from one of Investor No. 3's accounts but the bank notified Investor No. 3 who halted the transfer. When Investor No. 3 confronted Defendants over these transactions, Defendants

paid Investor No. 3 back from money that again appears to have come from the bank account of another unrelated party.

6.     Defendants' ability to misappropriate client funds was enhanced by SIA's failure to comply with custodial rules.  Indeed, SIA failed to engage an independent public accountant for the years 2006-2009 to perform a surprise examination of its advisory clients' assets over which Defendants had custody.  Moreover, certain assets of SIA clients were held in a physical form in a safe in Starrco's offices despite the fact that none of Defendants are qualified custodians.

7.     In addition to the fact that each of the unauthorized transfers of client funds was a violation of the securities laws, the pattern of repeated conduct demonstrates that the assets of all of Defendants' clients are at risk of misappropriation by Defendants.  Consequently, expedited relief is needed to halt the fraud and to prevent the Defendants from unlawfully misappropriating any additional client funds.

8.     To halt the ongoing fraud, maintain the status quo, and preserve any assets for injured investors, the Commission seeks emergency relief, including temporary restraining orders and preliminary injunctions, and an order:  (i) imposing asset freezes against the Defendants and the Relief Defendants; (ii) appointing a Receiver over SIA, Starrco, and Colcave; (iii) allowing expedited discovery against Defendants and the Relief Defendants and preventing the destruction of Defendants' and Relief Defendants' documents; (iv) requiring that Defendants and Relief Defendants provide verified accountings; (v) repatriating funds transferred by Defendants and Relief Defendants to foreign accounts and the freezing of such funds; (vi) imposing a constructive trust over the apartment purchased by Colcave in which Starr and Passage reside; and (vii)

enjoining the Defendants and Relief Defendants and any third party from filing bankruptcy on behalf of the Defendants and Relief Defendants without leave of the Court and notice to the Commission. The Commission seeks permanent injunctions, disgorgement of ill-gotten gains plus prejudgment interest on a joint and several basis and civil monetary penalties against all of the Defendants. The Commission also seeks an order requiring that Relief Defendants disgorge all assets of Defendants' clients that improperly were transferred to them, together with prejudgment interest, including, but not limited to, the apartment purchased by Colcave in which Starr and Passage reside.

## VIOLATIONS

9.      By virtue of the conduct alleged herein:

      a.      Defendants, directly or indirectly, singly or in concert, have engaged and are engaging in acts, practices and courses of business, that constitute violations of Sections 206(1) and 206(2) of the Investment Advisers Acts of 1940 ("Advisers Act"); and

      b.      SIA, directly or indirectly, singly or in concert, has engaged and is engaging in acts, practices and courses of business, that constitute violations of Section 206(4) of the Advisers Act and Rules 206(4)-2(a)(1) thereunder.

10.     Unless Defendants are temporarily, preliminarily, and permanently restrained and enjoined, they will continue to engage in the acts, practices and courses of business set forth in this Complaint and in acts, practices, and courses of business of similar type and object.

4

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

11.     The Commission brings this action pursuant to the authority conferred upon it by Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)], seeking to restrain and enjoin permanently the Defendants from engaging in the acts, practices and courses of business alleged herein.

12.     In addition to the injunctive relief recited above, the Commission seeks: (i) final judgments ordering Defendants to disgorge their ill-gotten gains with prejudgment interest thereon on a joint and several basis; (ii) final judgments ordering Defendants to pay civil penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(d)]; (iii) final judgments ordering Relief Defendants to disgorge their ill-gotten gains with prejudgment interest thereon; and (iv) such other relief as the Court deems just and appropriate.

13.     The Commission also seeks as immediate relief against Defendants, a temporary restraining order, a preliminary injunction, asset freezes (including of repatriated funds), the appointment of a Receiver over SIA and Starrco, verified accountings, expedited discovery, and an order prohibiting the destruction or alteration of documents.

14.     The Commission also seeks as immediate relief against Relief Defendants, asset freezes (including of repatriated funds), verified accountings, an order prohibiting the destruction or alteration of documents, the imposition of a constructive trust over the apartment purchased by Colcave, and the appointment of a receiver over Colcave.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this action, pursuant to Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391. The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails and wires, in connection with transactions, acts, practices, and courses of business alleged herein. A substantial part of the events comprising Defendants' fraudulent activities giving rise to the Commission's claims occurred in the Southern District of New York as Defendants live in the Southern District of New York and/or maintain their offices in this district.

## THE DEFENDANTS

17. **Starr Investment Advisors, LLC ("SIA")**, is a Delaware limited liability company based in New York, New York and located at 850 Third Avenue. SIA has been registered with the Commission as an investment advisor since June 2, 2006.

18. **Starr & Company, LLC ("Starrco")**, is a New York limited liability company located in New York, New York. It owns 100% of SIA. While Starrco is not registered with the Commission in any capacity, Starrco provided investment advisory services to its clients who were not also SIA clients.

19. **Kenneth Ira Starr ("Starr")**, age 65, is a resident of New York, New York. He is the CEO of SIA. He also owns 95% of Starrco and is a manager of that company. The other 5% interest in Starrco is held by Kisco, CPA, PC (formerly Starr & Company, CPA PC), a company wholly-owned by Starr. Starr is also an attorney and since 1967 has been admitted to practice law in the State of New York. Until March

6

2010, Starr was a registered representative of Diamond Edge Capital Partners, LLC, a

registered broker-dealer. (Starr is a partner in Diamond Edge Capital Holdings, LLC.)

## THE RELIEF DEFENDANTS

20. **Diane Passage ("Passage")**, is a resident of New York, New York and is

presently married to Starr. Ms. Passage purports to be a producer of films and plays, and

a philanthropist. Defendants' clients's funds were improperly sent to an account jointly

held by Starr and Passage.

21. **Colcave, LLC ("Colcave")**, is a Delaware limited liability corporation

created on April 13, 2010 and controlled by Starr. On April 16, 2010, Colcave purchased

a condominium apartment in Manhattan for use as the personal residence of Starr and

Passage. This apartment was purchased with funds that were misappropriated from at

least three SIA and Starrco clients. In connection with this transaction, Starr signed all

documents on behalf of Colcave.

## FACTS

22. Starr, through SIA, an entity he controls, provides investment advisory

services to more than thirty high net-worth individuals, many of whom are socialites or

luminaries in the entertainment and business worlds. Assets under management at SIA

exceed $700,000,000. Through Starrco, SIA's unregistered parent company that is also

controlled by Starr, Starr provides advisory, accounting, tax preparation, business

management, bill paying, and concierge services to a larger but overlapping group of

approximately 175 clients. Defendants have power of attorney or signatory authority

over many bank and investment accounts belonging to SIA's and Starrco's clients.

23.     Between April 13 and April 16, 2010, Defendants transferred
approximately $7 million from the accounts of three SIA and Starrco clients, including
$1,000,000 from the account of Investor No. 1, $5,750,000 from the account of Investor
No. 4 and $250,000 from the account of Investor No. 5. None of these transfers was
authorized. This money was used to purchase a luxury Manhattan apartment for Starr.

24.     As reported in the press, the apartment purchased for Starr and Passage is
a 5-bedroom, 6.5 bathroom "townhouse condominium home," which includes a
recreation room with a wet bar, a 32-foot granite lap pool, and a 1,500 square-foot
garden. Starr sent change of address cards stating that he and Passage had moved to this
apartment. While the purchaser of the apartment was Colcave, Colcave is controlled by
Starr who signed all documents on behalf of Colcave in connection with the apartment
purchase.

25.     The money from the three clients' accounts was transferred to the trust
account of an attorney who represents Defendants (the "attorney trust account"). While
this attorney is a partner at a prominent national firm, the attorney trust account was held
in the attorney's own name and not in the firm's name. Six million dollars of the client
money that had been transferred to the attorney trust account was then sent directly to the
attorney representing the seller of the apartment. The remainder was transferred from the
trust account to Starr's brokerage account, much of which was used for costs relating to
the apartment purchase.

26.     Investor No. 1 detected the unauthorized transfer and demanded a refund.
On April 26, 2010, Defendants refunded Investor No. 1's money through a transfer from
the attorney trust account. On that same day, however, Defendants had transferred $1

8

million from the account belonging to Investor No. 2 into the attorney trust account. This transfer of funds from Investor No. 2 was also unauthorized. In sum, Defendants used funds from Investor No. 2 to repay what they had misappropriated from Investor No. 1. Investor Nos. 4 and 5 have not been repaid.

27.    This was not the first time that Defendants misappropriated money from the accounts of SIA and Starrco clients. On four dates (August 12, October 8, October 9, and October 13, 2009), Starr transferred a total of $1,200,000 from the account of Investor No. 3. Of this amount, $700,000 was unauthorized. In addition, on four later dates (November 2, 13, 18, and 25, 2009), Starr transferred a total of $1,000,000 from the accounts of a charity run by Investor No. 3 without Investor No. 3's authorization and for purposes having no connection to the charity or Investor No. 3. The vast majority of these funds were sent to the attorney trust account. In April 2010, Starr attempted to withdraw an additional $750,000 from the personal account of Investor No. 3. Starr's plans were frustrated, however, when the bank alerted Investor No. 3 and Investor No. 3 halted the transfer.

28.    When confronted by lawyers representing Investor No. 3, Starr explained that the transfers were in error and that he had intended to transfer the money from a different investor. That different investor, however, had ceased being a client of SIA or Starrco as of September 2008. Consequently, Starr's explanation to Investor No. 3 for the transfer of the funds is not credible.

29.    On May 4, 2010, in an apparent attempt to resolve the matter, Defendants delivered two checks, totaling $1.7 million, to Investor No. 3. These checks were written from the attorney trust account. The apparent source of the money paid to Investor No. 3

was a $2 million deposit into the attorney trust account by a third party. Upon information and belief, the third party was not informed that the money deposited into the attorney trust account would be used to repay money Defendants had misappropriated.

30.     Another instance of Defendants misappropriating client funds took place in 2008. During the time period of May through June 2008, Defendants told Investor No. 6 of certain investments in which only close personal friends were allowed to participate. Starr told Investor No. 6 that these investments were sure things that would generate a return of 5 to 10 times the initial investment.

31.     In response to Defendants' recommendation, Investor No. 6 provided at least $2 million to Defendants. This money was deposited in an account in the name of an LLC, controlled by Starr but outside of SIA or Starrco. At least $1.1 million of this money was subsequently transferred to the personal bank account of Starr and Passage.

32.     In 2009, Investor No. 6 requested the money back. Starr informed Investor No. 6 that it was too early. Starr subsequently stated that he could arrange for Investor No. 6 to get the money back in exchange for an 11% commission. To date, however, Starr has not returned Investor No. 6's money.

33.     Defendants were able to misappropriate client funds, in part, because SIA violated various Commission rules applicable to investment advisors concerning the custody of client funds and securities. SIA failed to make sure that its clients' funds and securities were maintained by a qualified custodian. In fact, certain client assets were being held in physical form in a safe in Starrco's offices despite the fact that Starrco is not a qualified custodian. And from 2006-2009, SIA failed to engage an independent

public accountant to verify through the performance of surprise examinations that the funds and securities of Defendants' clients were being properly maintained.

## FIRST CLAIM FOR RELIEF
### (Violations of Section 206(1) and 206(2) of the Advisers Act)
### (Against All Defendants)

34.　The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 33 of this Complaint.

35.　Defendants are all investment advisors. SIA is a registered investment advisor and its clients signed an Investment Advisory Agreement under which SIA was appointed investment manager and adviser in exchange for a percentage fee.

36.　As the co-owner and managing director of SIA, Starr is also an investment advisor under Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

37.　While Starrco is not a registered investment advisor, Starrco provided advisory services to its clients who had not entered into a advisory agreements with SIA.

38.　Defendants directly or indirectly, singly or in concert, knowingly or recklessly, through the use of the mails or any means or instrumentality of interstate commerce, while acting as investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)]: (a) have employed devices, schemes, and artifices to defraud any client or prospective client; or (b) have engaged in acts, practices, or courses of business which operate as a fraud or deceit upon any client or prospective client.

39.　By reason of foregoing, Defendants, directly or indirectly, singly or in concert, have violated, are violating, and unless enjoined, will continue to violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2)].

## SECOND CLAIM FOR RELIEF
### (Violations of Section 206(4) of the Advisers Act and Rules 206(4)-2(a)(1))
### (Against SIA)

40.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 39 of this Complaint.

41.     SIA at all relevant times was a registered investment adviser within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

42.     Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] prohibits any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, engage in any act, practice of course of business which is fraudulent deceptive or manipulative.

43.     Advisers Act Rule 206(4)-2(a)(1) [75 C.F.R. § 275.206(4)-2(a)(1)] provides that an investment advisor engaged in a fraudulent act if it has custody of client funds or securities unless: (a) the funds or securities are maintained by a qualified custodian; (b) notice of the qualified custodian is provided to the clients; (c) the adviser has a reasonable basis for believing that the qualified custodian has sent account statements, at least quarterly; and (d) there is verification of funds and securities by an independent public accountant.

44.     SIA violated Section 206(4) and Rule 206(4)-2(a)(1) as it maintained SIA client securities in Starrco's safe and had signatory authority over client bank and securities accounts, despite the fact that none of SIA, Starrco, or Starr are qualified custodians. Further, SIA failed to engage an independent public accountant to conduct a verification of these securities and that the signatory authority was used for valid purposes only.

45.    By reason of foregoing, SIA, directly or indirectly, singly or in concert, has violated, is violating, and unless enjoined, will continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2(a)(1) promulgated thereunder [75 C.F.R. § 275.206(4)-2(a)(1)].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining Defendants, their agents, servants, employees and attorneys and all persons in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Sections 206(1) and 206(2) of the Advisers Act  [15 U.S.C. §§ 80b-6(1)-(2)].

### II.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining SIA, its agents, servants, employees and attorneys and all persons in active concert or participation with it, who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 206(4) of the Advisers Act [15 U.S.C. § 806-6(4)] and Rule 206(4)-2(a)(1) promulgated thereunder [75 C.F.R. § 275.206(4)-2(a)(1)].

### III.

An Order directing Defendants and Relief Defendants and each of their financial and brokerage institutions, agents, servants, employees attorneys-in-fact, and those

persons in active concert or participation with them who receive actual notice of such Order by personal service, facsimile service, or otherwise, to hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the control of Defendants and/or Relief Defendants, whether held in their names or for their direct or indirect beneficial interest wherever situated.

## IV.

An Order directing Defendants to file with this Court and serve upon the Commission a verified written accounting, signed by each such Defendant, and under penalty of perjury, setting forth:

(1)    All transfers of funds or securities made by clients of Defendants from January 1, 2005 through the present;

(2)    The purpose for each transfer of funds or securities;

(3)    The account controlled by Defendants or their agents to which such transfer of funds or securities was made; and

(4)    The accounts to which such funds or securities were ultimately sent.

Such information should be accompanied with backup documentation demonstrating the validity of the information provided.

**V.**

An Order directing Defendants and Relief Defendants to file with this Court and serve upon the Commission a verified written accounting, signed by each such Defendant and Relief Defendant, and under penalty of perjury, setting forth:

(1)     All assets, liabilities and property currently held, directly or indirectly, by or for the benefit of each such Defendant and Relief Defendant, including, without limitation, bank accounts, brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

(2)     All money, property, assets and income received by each such Defendant and Relief Defendant for his or her direct or indirect benefit, at any time from January 1, 2005 through the date of such accounting, describing the source, amount, disposition and current location of each of the items listed;

(3)     The names and last known addresses of all bailees, debtors, and other persons and entities that currently are holding the assets, funds or property of each such Defendant and Relief Defendant; and

(4)     All assets, funds, securities, and real or personal property received by each such Defendant or Relief Defendant, or any other person controlled by them, from persons who provided money to the Defendants and Relief Defendant in connection with the offer, purchase or sale of securities, from January 1, 2005 to

15

the date of the accounting, and the disposition of such assets, funds, securities, real or personal property.

Such information should be accompanied with backup documentation demonstrating the validity of the information provided.

## VI.

An Order directing the appointment of a Receiver over SIA, Starrco, and Colcave to ensure the status quo; to protect the assets of Defendants and Relief Defendants from being dissipated; to maintain the business of SIA and Starrco until such time as the clients of SIA and Starrco determine what course of action they will take concerning the management and oversight of their assets; and to ensure that future transfers of funds or securities from Defendants' clients are being made for legitimate purposes and that such funds are not improperly being diverted to Defendants.

## VII.

An Order directing expedited discovery against Defendants and Relief Defendants.

## VIII.

An Order enjoining and restraining Defendants and Relief Defendants, and any person or entity acting at their direction or on their behalf, from destroying, altering, concealing, or otherwise interfering with the access of the Commission to relevant documents, books and records.

## IX.

An order preventing any of Defendants' and Relief Defendants' creditors or claimants, or any person acting on behalf of such creditor or claimant, from taking any

action to interfere with the taking control, possession, or management of Defendants' or Relief Defendants' assets.

## X.

A Final Judgment ordering Defendants to disgorge their ill-gotten gain, plus prejudgment interest on a joint and several basis, and such other and further amount as the Court may find appropriate.

## XI.

A Final Judgment ordering Defendants to pay civil money penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9].

## XII.

A Final Judgment ordering Relief Defendants to disgorge all funds belonging to the clients of Defendants and all property, real or otherwise, purchased with the funds of Defendants' clients, plus prejudgment interest.

## XIII.

An order enjoining and restraining each of Defendants and Relief Defendants, and their agents, employees, attorneys, or other professionals, anyone acting in concert with them, and any third party from filing a bankruptcy proceeding on behalf of any of the Defendants or Relief Defendants without at least 3 days notice to Plaintiff and approval of this Court.

## XIV.

An order requiring Defendants to repatriate assets held outside the United States by the Defendants and freezing those assets once repatriated.

## XV.

An order imposing a constructive trust over the apartment at 433 East 74th Street,

New York, NY, which was purchased by Colcave, LLP with funds misappropriated from

SIA and Starrco clients.

## XVI.

Such other and further relief as to this Court deems just and proper.

Dated: May 27, 2010
   New York, New York


Respectfully submitted,


George S. Canellos
ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
Regional Director
New York Regional Office
3 World Financial Center, Room 400
New York, New York 10281
(212) 336-1100


*Of Counsel:*

Sanjay Wadhwa
Todd D. Brody
Robert Murphy
Timothy Casey
Sandeep Satwalekar