UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

                                            Plaintiff,

   -against-                                          10 CIV. 4270 (SHS)

KENNETH IRA STARR, STARR INVESTMENT
ADVISORS, LLC, and STARR & COMPANY, LLC,

                                            Defendants,

DIANE PASSAGE and COLCAVE, LLC,

                                            Relief Defendants.
------------------------------------------------------------------x

## FIRST REPORT OF THE INTERIM MONITOR

     Aurora Cassirer, Esq., in her capacity as interim monitor (the "Monitor") appointed in the above-captioned case by Order of this Court dated June 1, 2010 (the "Monitor Order"),[1] respectfully submits this initial report to the Court and to the Securities and Exchange Commission (the "SEC") concerning her activities as Monitor during the period from June 1, 2010 to June 4, 2010. As discussed below, although the Monitor was appointed only a few days ago, the Monitor has concluded, and hereby recommends to the Court and to the SEC, that a receiver be appointed in this action as soon as possible.

     1.       On each of the four days since my appointment as Monitor, I have been in the offices of defendants Starr Investment Advisors, LLC ("SIA") and Starr & Company, LLC ("Starr & Co.," and together with SIA, the "Starr Companies"), at 850 Third Avenue, New York, New York, to interview key employees, begin the process of identifying and reviewing important documentation, and to deal with a great number of questions, issues and problems raised by,

1

among others, clients and former clients of the Starr Companies, remaining employees of the Starr Companies and the banks at which the numerous bank accounts of the Starr Companies and their clients are maintained.

2. During the past four days, I have spoken extensively with Ron Starr (the son of defendant Kenneth Starr), who holds the titles of Chief Compliance Officer, Managing Director and Senior Investment Committee Member of SIA, which I understand to be a registered investment advisory company. He also does tax return preparation work for both the Starr Companies and certain of their clients. Ron Starr appears to be the second in command at the Starr Companies after his father, but he has clearly not assumed the management role performed by his father. In fact, he states that he has very little involvement in, or knowledge of, the day to day operations of the businesses.

3. I have also had extensive conversations with Roseann Ragano, the Controller of the Starr Companies, and Christine Murphy, who maintains records relating to the bank accounts of clients of the Starr Companies. With the assistance of Ron Starr, Roseann Ragano and Christine Murphy, I have been able to obtain a basic understanding of the business conducted by the Starr Companies and the nature of the services rendered to their clients. Those individuals have provided information concerning: (a) the employees of the Starr Companies; (b) the identity of clients of the Starr Companies; (c) the bank accounts of the clients, as to which Kenneth Starr or others at the Starr Companies had signatory authority in some cases but not in all cases; and (d) certain bank accounts maintained by Kenneth Starr, the Starr Companies and Colcave.[2]

4. The business of Starr & Co. involves, in large measure, the management of the

---

[1] A copy of the Monitor Order is annexed hereto as Exhibit "A."
[2] Thus far it appears that the only bank account in the name of one of the Starr entities with any significant balance

2

personal affairs of high-net-worth clients (including individuals, business entities, personal trusts and others). For these personal management clients, Starr & Co. performs accounting, bookkeeping and tax return preparation services. Starr & Co. also collects and deposits into one or more of the client's bank accounts various forms of income (royalty checks, performance fees, etc.), and from the same client bank account(s), Starr & Co. pays, or arranges for the client to pay, mortgage bills, rent bills and a host of other types of obligations of the client, including in some cases the salaries of the client's employees (which are paid through Paychex). Among the records that I have obtained is a list of the managed bank accounts of these personal management clients. It appears that there are 30 or 40 personal management clients left, down from approximately 140 just a month or two ago, and the list of remaining clients has grown smaller each day as clients, or their attorneys or other representatives, ask that the clients' accounts be transferred to new management companies. Various account managers have left the firm, and others are leaving the firm, and the clients that the managers have serviced are leaving with them.

5. The other principal component of the Starr Companies' business is the investment advisory and management business conducted by SIA. Since my appointment as Monitor, I have reviewed account records and statements of various SIA clients to develop an understanding of the way this business has been conducted. Because of the current freeze on bank accounts and related injunctive relief, there is to my knowledge no investment activity currently being conducted at SIA. Very clearly, however, it is imperative that a detailed forensic examination of the business of SIA and transactions between SIA and related parties be commenced and conducted as soon as possible, and such an examination is not within the scope of my authority as Monitor.

---

is a Colcave account which I am advised holds approximately $700,000.

3

6.     As of June 1, the Starr Companies owed approximately $1.2 million in various payables. I have been advised that the Starr Companies' weekly payroll is down to approximately $139,000, but there is only $40,000 in the Starr Companies' bank accounts. I understand that the monthly billings of the Starr Companies have been approximately $650,000, but as of the first day of my appointment, the May bills had not been issued. I was asked by the Controller whether she could issue bills to clients for the month of May, and I advised her that the bills could be issued. I cannot presently predict the timing or amounts of any collections that may result from the issuance of such bills. I can predict, however, that future billings by the Starr Companies will be in much reduced amounts.

7.     Numerous questions have come up during the past few days concerning whether client files can be released to the clients; whether remaining employees can be terminated, either because their services are no longer required or so they can collect unemployment and Medicare or Medicaid; and whether such obligations as payroll and health insurance premiums can or will at some point be paid. The companies' health insurance has in fact lapsed and those employees who are still coming to work are not covered by an extant health insurance policy, nor do they know whether they will be compensated for their time.

8.     Numerous clients are pressing to obtain access to, or copies of, their files. I have spoken to account managers at Starr & Co. and to representatives of various clients regarding their accounts, and I have been dealing with some of their issues as I learn of them. I have also been in touch with the IT servicer, Paychex, which facilitates payroll services, and CMC Interactive, which deals with 401(K) accounts for the Starr Companies. I have also communicated with representatives of various banks at which the Starr Companies' clients maintain their accounts with regard to problems encountered by clients in paying their bills due

to the freezing of those accounts. In addition, I have communicated regularly with attorneys in the SEC and the United States Attorney's Office concerning my activities as Monitor and the various issues, questions and problems that have arisen at the Starr Companies.

9. The Monitor Order granted me the authority to "monitor the expenses and transfers into and out of" Starr & Co., SIA and Colcave and provided that "No expense in excess of $1,000 may be paid by any of the three entities without the prior approval of the monitor." In fact, because of the current freeze on the bank accounts of those entities, to my knowledge no transfers have been made by those companies since the Monitor Order was issued. On the other hand, with regard to the clients' payment of their own personal expenses from their own bank accounts, such as mortgage payments, rental payments and the like, I have been working with the Starr Company employees and communicating with various clients and their banks, to facilitate the clients' payments of those expenses in situations where the freeze on accounts appeared to or actually did pose an impediment to payment.

10. In order to expeditiously assess the situation at the Starr Companies, and to address the numerous operations issues which have come to my attention as Monitor in just these few days, I have fortunately been able to enlist the assistance of other attorneys and support staff within my law firm, Troutman Sanders LLP. It will be critical for the Monitor, or for a receiver if one is appointed, to formally engage the services of a law firm, to assist the Monitor or receiver in addressing the innumerable legal issues that will arise and have already begun to arise. Similarly, it will be critical for the Monitor, or a receiver, to very quickly engage the services of a financial and accounting firm, with established forensic accounting capabilities, to assist the Monitor or receiver in, among other things: (a) establishing a firm understanding of and control over the books and records of the companies, and to reconstruct records where necessary;

(b) conducting necessary investigations for possible fraudulent or otherwise illicit transfers and transactions involving the Defendants, the Relief Defendants or other involved persons; and (c) identifying other claims that might be pursued or assets that might be recovered for the benefit of creditors. However, as of this date, I have not filed an application to approve the retention of counsel for the Monitor, both because of the time exigencies of the case, and because I believe that it would be more efficient to await the results of the hearing scheduled for June 10, 2010, and the possible appointment of a receiver on that date, to enter into formal engagements with professionals.

11. As Monitor, I have not been granted the authority to address the operational issues that have been proliferating and will continue to arise, but these issues do need to be addressed. The management role performed by Kenneth Starr has not been assumed by Ron Starr or any of the other employees of the Starr Companies since Kenneth Starr was arrested. There is therefore currently a vacuum of management at the Starr Companies. Moreover, there is an immediate need to secure the offices of the Starr Companies, identify and retain key employees, if any, and gain a thorough understanding of the financial position of the Starr Companies, their assets and properties. For these reasons, I believe that the appointment of a receiver is the only feasible way to bring some order and control to this situation.

12. In the event that this Court does not appoint a receiver, or defers its decision on that issue, beyond Monday's hearing, then I would ask the Court to supplement or clarify the terms of the Monitor Order to provide me with the authority to undertake some of the activities necessary to preserve and protect the assets and properties of the Starr Companies and to address the interests and concerns of customers and employees of the Starr Companies. In particular, I would request in the first instance that the Court grant authority to the Monitor to: (a) engage

professionals; (b) secure the premises of the Starr Companies as necessary; (c) control the disposition of documents and files in the possession of the Starr Companies and Colcave; (d) make decisions for the Starr Companies concerning the retention or termination of employees; and (e) accept service of legal papers for the Starr Companies and Colcave.

Dated: New York, New York
      June 4, 2010

Respectfully submitted,

*Aurora Cassirer*

Aurora Cassirer, Monitor
Troutman Sanders, LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
212-704-6000
aurora.cassirer@troutmansanders.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/1/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION, :        10 Civ. 4270 (SHS)

                Plaintiff,    :        ORDER

    -against-    :

KENNETH IRA STARR, STARR INVESTMENT :
ADVISORS, LLC, and STARR & CO., LLC,

                Defendants.    :

DIANE PASSAGE and COLCAVE, LLC,

                Relief Defendants.    :

------------------------------------------------------------x

SIDNEY H. STEIN, U.S.D.J.

    A conference having been held today in open court, with only counsel for plaintiff appearing and no other appearances having been made,

    IT IS HEREBY ORDERED that:

    1. Aurora Cassirer, Esq. of Troutman Sanders LLP is appointed as interim monitor. Ms. Cassirer shall have the authority to monitor the expenses and transfers into and out of Starr Investment Advisors, LLC, Starr & Co., LLC, and Colcave, LLC. No expense in excess of $1,000 may be paid by any of the three entities without the prior approval of the monitor. The monitor shall be given access to all books and records, officers and employees, and any outside advisors, including attorneys and accountants.

    2. No transfers of funds by those entities may be made to any of the individual defendants or relief defendants.

3. The terms of the temporary restraining order signed on May 27, 2010 remain in effect until the hearing on plaintiff's request for issuance of a preliminary injunction which is scheduled for June 10, 2010, at 9:30 a.m. If defendants and relief defendants fail to appear in this action on or before June 4, 2010, plaintiff may move before this Court on June 7, 2010, at 11:00 a.m. for the appointment of a receiver.

Dated: New York, New York
June 1, 2010

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.