Hearing Date: September 23, 2010 at 12:00 p.m. EST
Objection Deadline: September 21, 2010 at 5:00 p.m. EST

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,                :
                                                   :
                                   Plaintiff,      :
                                                   :     10 CIV. 4270 (SHS)
           -against-                               :
                                                   :
KENNETH IRA STARR, STARR INVESTMENT                :
ADVISORS, LLC, and STARR & COMPANY, LLC,           :
                                                   :
                                  Defendants,      :
                                                   :
DIANE PASSAGE and COLCAVE, LLC,                    :
                                                   :
                          Relief Defendants.       :
                                                   :
------------------------------------------------------------------------ x

NOTICE OF RECEIVER'S MOTION TO APPROVE THE
DISPOSITION OF CERTAIN FURNITURE AND EQUIPMENT
AND THE REJECTION OF CERTAIN LEASES AND CONTRACTS

        PLEASE TAKE NOTICE that upon the annexed motion (the "Motion") of

Aurora Cassirer, Esq., in her capacity as receiver (the "Receiver") for Defendants Starr

Investment Advisors, LLC, Starr & Company, LLC ("Starrco") and Relief Defendant Colcave

LLC appointed in the above-captioned case, by and through her counsel, Troutman Sanders LLP,

will move this Court for entry of an Order approving the disposition of furniture and equipment

owned by Starrco and the rejection of certain leases of real property and equipment.

        PLEASE TAKE FURTHER NOTICE that a hearing will be held before the Honorable

Sidney H. Stein, United States District Judge, at the Daniel Patrick Moynihan United States

Courthouse, 500 Pearl St., New York, NY 10007, Courtroom 23A, on **September 23, 2010 at 12:00 p.m. EST** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion, must comply with the Federal Rules of Civil Procedure, must set forth in writing a description of the basis hereof, must be filed with the Court and served upon the undersigned counsel to the Receiver so as to be received no later than **5:00 p.m. EST on September 21, 2010.**

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed or served, the Court may grant relief requested in the Motion without a hearing.

Dated: New York, New York
     September 13, 2010

Respectfully submitted,

By:  /s/*Lee W. Stremba*
     Lee W. Stremba
Troutman Sanders LLP
Counsel to the Receiver
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(**P**) 212-704-6000
lee.stremba@troutmansanders.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION,                   :
                                                      :
                                        Plaintiff,    :
                                                      :   10 CIV. 4270 (SHS)
            -against-                                 :
                                                      :
KENNETH IRA STARR, STARR INVESTMENT                   :
ADVISORS, LLC, and STARR & COMPANY, LLC,              :
                                                      :
                                       Defendants,    :
                                                      :
DIANE PASSAGE and COLCAVE, LLC,                       :
                                                      :
                                  Relief Defendants.  :
------------------------------------------------------------------------- x

### RECEIVER'S MOTION TO APPROVE THE DISPOSITION OF CERTAIN FURNITURE AND EQUIPMENT AND THE REJECTION OF CERTAIN LEASES AND CONTRACTS

Aurora Cassirer, Esq., in her capacity as receiver (the "Receiver") for Defendants Starr Investment Advisors, LLC ("SIA"), Starr & Company, LLC ("Starrco," and together with SIA, collectively the "Starr Companies") and Relief Defendant Colcave LLC ("Colcave," and collectively with Starrco and SIA, the "Receivership Estates"), appointed in the above-captioned case (the "Receivership Action") by Order of this Court dated July 8, 2010 (the "Preliminary Injunction Order") (Docket No. 19), respectfully moves this Court for an order approving the disposition of furniture and equipment owned by Starrco and the rejection of certain leases of real property and equipment (the "Motion").

### I.      INTRODUCTION

The Receiver is preparing to vacate the premises at 850 Third Avenue, New York, New York formerly used as the offices of the Starr Companies (the "Starr Offices"), and in that

1423456v1

connection, she must dispose of a significant amount of used furniture and office equipment which is owed by Starrco and presently located at the Starr Offices. The Receiver has determined that it is in the best interests of the Receivership estates to pay a liquidator to dismantle and remove all of said furniture and office equipment from the premises at a cost of approximately $12,000.[1]   By this motion, the Receiver seeks to provide notice to parties in interest of, and obtain the Court's approval for, her proposed disposition for the said furniture and office equipment.

In addition, the Receiver has identified certain real property leases that should be rejected. Those leases include Starrco's lease for the Starr Offices, which will soon be vacated, and a lease in Starrco's name (as tenant) for a residential apartment on East 79th Street in Manhattan that is or has been occupied by defendant Kenneth Starr and his wife, relief defendant Dianne Passage ("Passage"), but never occupied by Starrco. The Receiver has also identified an equipment lease pursuant to which Starrco leased the photocopy machines that had been in use at the Starrco offices. The photocopy machines that are the subject of the said equipment lease have been returned to the lessor and the equipment lease should accordingly be rejected. By this motion, the Receiver seeks approval of her rejection of the aforesaid real property and equipment leases to carry out her obligation to preserve the assets and minimize the expenses of the Receivership estates.

---

[1] As indicated below, there is a possibility that Starrco's landlord at the 850 Third Avenue premises may allow the Receiver to leave the furniture and office equipment behind and nevertheless deem the premises to be vacated. The Receiver hereby seeks permission to abandon the said property to Starrco's landlord, in the event that such alternative becomes available, or to accept any other offer that the Receiver may obtain for disposal of Starrco's furniture and office equipment on better terms than those she already obtained.

## II.     BACKGROUND

### A.     History of Proceedings

On May 27, 2010, the Securities and Exchange Commission (the "SEC") commenced the within lawsuit in this Court against the above-captioned Defendants and Relief Defendants. The SEC alleges, in its Complaint filed on May 27, 2010, that the Defendants perpetrated a fraudulent scheme, abusing the signatory power they had over their clients' bank and investment accounts and misappropriating client funds for their own purposes, and as a result directly or indirectly engaged in acts in violation of the Investment Advisers Acts of 1940 (the "Advisers Act"). *Complaint.* 2-7.

The Court found good cause to believe that the Defendants violated the Advisers Act. Accordingly, on May 27, 2010, the Court entered an Order (Docket No. 2) imposing, among other things, asset freezes against the Defendants and the Relief Defendants and a constructive trust over a condominium unit locate at 433 East 74th Street, New York, New York (the "Colcave Apartment") that was purchased in April of 2010 for approximately $7.5 million, which the SEC alleges was purchased by Colcave (an entity organized by Kenneth Starr) with funds misappropriated from accounts of Starrco clients.

By Order of this Court dated June 1, 2010 (Docket No. 5), Aurora Cassirer, Esq. was appointed interim monitor for the Receivership Estates and granted with the authority to monitor the expenses and transfers into and out of the bank accounts of the Receivership Estates. On June 4, 2010, in advance of the June 7, 2010 scheduled hearing date for a preliminary injunction motion filed by the SEC, the Receiver filed a First Report of Interim Monitor summarizing her activities as interim monitor for the first four days of her tenure as interim monitor (the "Monitor's Report") (Docket No. 11).

1423456v1

Ms. Cassirer's tenure as interim monitor continued until the June 7, 2010 hearing date when, although the SEC's preliminary injunction motion was adjourned, this Court issued an Order (Docket No. 13) appointing Ms. Cassirer temporary receiver for the Receivership Estates and granted her the authority to retain immediate custody and control of all assets and property of the Receivership Estates, and take all steps necessary to protect such assets and property.

On July 8, 2010, this Court heard from counsel with respect to the SEC's adjourned motion for preliminary injunctive relief and with respect to motions filed by Kenneth Starr and by the US Attorneys' Office seeking a stay of proceedings in the within action. In advance of the said hearing, Ms. Cassirer submitted that certain First Report of the Temporary Receiver (the "Temporary Receiver's Report") (Docket No. 18) which, among other things, summarized her ongoing efforts to effectively administer the Receivership Estates through July 7, 2010, and requested that the Court grant the SEC's motion for preliminary injunction relief, thereby appointing the Receiver on a permanent basis.

Following counsels' presentations on July 8, 2010, this Court entered the Preliminary Injunction Order (Docket No. 19): (a) preliminarily enjoining, the Defendants from violating the Advisers Act; (b) freezing assets of the Defendants and Relief Defendants; (c) requiring the Defendants and Relief Defendants to render accountings; (d) preventing the Defendants and Relief Defendants from destroying, concealing or altering any books, records, documents, electronic data or computer files; (e) appointing the Receiver on a permanent basis over the Receivership Estates, with all of the powers set forth in the Preliminary Injunctions; and (f) preliminarily enjoining the Defendants and Relief Defendants from filing a bankruptcy proceeding without at least 3 days notice to the SEC and approval of the Court.

1423456v1

- 4 -

**B.     The Starr Companies' Receivership Estates**

As indicated in the Monitor's Report, the business of Starrco involved, in large measure, the management of the personal affairs of high-net-worth clients (including individuals, business entities, personal trusts and others).  As of June 1, 2010, based upon records that Ms. Cassirer obtained at the Starr Offices, and conversations with key employees of Starrco, it appeared that there were only 30 or 40 personal management clients left, down from approximately 140 just a month or two earlier, and the list of remaining clients was getting smaller each day as clients, or their attorneys or other representatives, asked that the clients' accounts be transferred to new management companies.  By July 8, 2010, when Ms. Cassirer assumed the position of Receiver, the abandonment of Starrco by its former clients was complete and Starrco was out of the business of providing personal client management services.

The other principal component of the Starr Companies' business was the investment advisory and management business conducted by SIA, a registered investment advisory firm. Because of the government's freeze on bank accounts of the Starr Companies and related injunctive relief, as of June 1, 2010, when Ms. Cassirer was appointed Monitor, there was no investment activity being conducted at SIA.  Thus, as with Starrco, as of the date that Ms. Cassirer became the Monitor of SIA, that company was effectively no longer conducting business.

*1.      The Receiver Must Vacate the Starr Offices.*

Following Ms. Cassirer's appointment as Monitor, and continuing steadily for weeks, she and her professionals were inundated with requests by representatives of former clients of the Starr Companies for delivery of the clients' files, including everything from current mail received by at the Starr Offices on behalf of clients (i.e., monthly bills, tax notices, investment account statements, etc.), to tax preparation materials needed for immediate tax filings, to

historic account files at the Starr Offices or in off-site storage. These requests have been particularly daunting for two principal reasons. First, by reason of subpoenas served by the US Attorney's Office, the Receiver is required to retain and preserve original client files. That meant that the Receiver had to arrange with clients to have the client's files identified and boxed at the Starr Offices and turned over to an outside copying service for either copying or scanning at the client's expense, an extremely time consuming and laborious process. In addition, the processing of client requests for files has been rendered all the more difficult and time consuming because the Receiver and her professionals have had little or no access to former Starrco employees who could have rendered valuable assistance to the Receiver in this process.

Although the requests of former clients of the Starr Companies were time consuming, and in many cases contentious, the Receiver and her professionals and clerical support staff deemed those requests, and the interests of the former clients generally, to be of fundamental importance to the process of closing and liquidating the business of the Starr Companies. As such, the requests of clients were given a very high priority and no doubt accounted for a large part of the time devoted by the Receiver and her professionals and clerical support during the first several weeks after her appointment as Receiver.

Having addressed the requests of former clients to the extent reasonably possible, while accommodating the interests of the government with regard to the preservation of documents, it is now time for the Receiver to proceed expeditiously to vacate the Starr Offices. To that end, the Receiver has undertaken to box all client files and other business records and documents currently at the premises to prepare to move those documents into off-site storage. Certain records and files deemed o ' significance to the Receivership Estates will be moved to the Troutman Sanders' offices so that they will be readily accessible for review. Nevertheless, there

will be close to 2,000 boxes moved into storage. The Receiver will have those boxes moved to GRM Information Management Systems ("GRM"), the same storage facility already used by Starrco for off-site storage of client files and business records, including electronic data. The Starr Companies' monthly storage charges were approximately $6,000 to $7,000 before the Receivership Action commenced. The monthly storage charges will obviously be materially greater after the boxes currently held at the Starr Offices are moved to GRM.[2]

In addition to the huge volume of files and business records to be removed from the Starr Offices, the Receiver must dispose of some fifty (50) rooms (including offices, conference rooms, file rooms and mail room) full of used desks, chairs, computers, televisions, printers and other assorted furniture and office equipment. It appears that with the exception of the copying machines, which were leased from Ricoh as described further below, the furniture and office equipment at the Starr Offices belongs to Starrco. An inventory of furniture and office equipment maintained by Starrco for tax purposes is attached hereto as Exhibit "A". This inventory was attached to the 2007 federal tax return of Starrco as the basis for the depreciation deduction taken by Starrco for that year. The inventory is not detailed or itemized, but provides a general indication of the volume and age of the furniture and office equipment at the Starrco premises.

In order to vacate the Starr premises, the Receiver needs to dispose of Starrco's furniture and office equipment. The Receiver, through one of Troutman Sanders' office administrators

---

[2] The Receiver has proposed to the US Attorney's Office that the government take possession of the Starr Companies' client files and business records since the government has, by subpoena, required that the originals of those records be preserved. Alternatively, the Receiver has requested that the US Attorney's Office confirm that the Receiver will have access to funds that were in the Starr Companies' bank accounts as of the commencement of the Receivership Action for payment of the costs to store those files. The government has declined to take possession of the files, and, thus far, the government has been silent as to whether the Receiver will have access to the funds in the Starr Companies' accounts to pay the costs of storage.

who is assisting her on this matter, has sought bids from professional liquidators for this purpose, and has also had discussions with Starrco's landlord to determine whether the landlord had any interest in keeping the furniture and equipment at the premises. The Receiver obtained bids from four professional liquidators: Business Asset Consultants N.E. ("BAC"), The Furniture Exchange, Glenwood Office Furniture II, Inc. and W5 Group LLC d/b/a Waldorf Demolition. Each one of those companies advised the Receiver that the furniture and equipment at the Starr premises has no market value, but each offered to remove and dismantle and remove all furniture and equipment from the premises for a price to be paid by the Receiver. The best offer obtained the Receiver came from BAC which offered to dismantle and remove all furniture and equipment from the Starr premises for a payment of $11,900.00. The amounts requested by the other liquidators as the price for disposing of the same property ranged from $18,500.00 to $28,850.00. If Starrco's landlord agrees that the Receiver can leave Starrco's furniture and office equipment in the Starr Offices and nevertheless be deemed to have vacated the premises, the Receiver would propose to abandon the furniture and office equipment in this fashion. Absent that alternative, the Receiver intends to accept BAC's proposal and arrange to have all of Starrco's furniture and equipment removed from the Starr premises as soon as possible. The cost of removal, including the payment to BAC and any incidental expenses, would be paid by the Receiver from the Starrco receivership bank account.

The furniture and equipment to be abandoned and disposed of by the Receiver as aforesaid includes numerous desk top and lap top computers used by the employees of Starrco. All data in those computers will be erased by BAC, which will certify to the Receiver that the hard drives have been erased.[3] In addition to the desktop and laptop computers in the

---

[3] In the event that Starrco's landlord agrees that Starrco's furniture and equipment can remain at the Starr Offices, the Receiver will make other arrangements to have any computers that will remain at the Starr Offices erased.

employees' offices, the Starr Companies have a computer room which houses the central computer servers for the Starr Companies. Those servers would not at this time be abandoned by the Receiver and removed by BAC. Rather, the servers will be moved to the Troutman Sanders offices for storage and disposition at a later time.

Agents of the Internal Revenue Service ("IRS"), acting in conjunction with the US Attorney's Office, have imaged (i.e. copied) the Starr Companies' servers and the hard drives of individual lap top and desk top computers that they have deemed of interest. The Receiver has notified the IRS of her intention to dispose of the Starr Companies' computers so that agents of the IRS can, if they deem necessary, image the hard drives of any computers that have not already been imaged before the computers are disposed of and erased.

The Receiver believes that she has been granted the authority to dispose of the personal property at the Starr Offices in a manner that she deems appropriate without further order of this Court. However, in an abundance of caution and in the interests of full disclosure, the Receiver has filed this Motion to advise all parties in interest of the Receiver's intentions and hereby requests that this Court approve the Receiver's disposition of such property as aforesaid.

In addition to Starrco's computer servers, which are to be moved to the Troutman Sanders offices, there are numerous other items of personal property located at the 850 Third Avenue premises which the Receiver does not intend to dispose of at this time. Such property includes decorative objects, art works and collectibles at the Starr Offices, including photographs, paintings, drawings, pieces of art glass and baseball memorabilia, as well as personal photographs, books and other personal effects. The Receiver intends to have such items of a personal nature moved to the Troutman Sanders offices or to an alternative storage site for later disposition. The Receiver has not yet had such items professionally appraised, but it does

not appear that such items are individually or collectively worth a significant amount of money. Moreover, it is likely that Kenneth Starr or others will assert an ownership interest in all or some of those items of tangible personal property.   At this point in the liquidation process, the Receiver's priority is to vacate the Starr Offices.   After that task is accomplished, the Receiver can address the disposition of the items of tangible personal property that will then remain in the Receiver's possession.

### 2.      *The Starr Companies Have Leases Which Must be Rejected.*

Starrco is the tenant under a lease with NY-Midtown Properties, L.L.C., dated as of August 11, 2004 (the "850 Third Avenue Lease"), pursuant to which the Starr Companies have occupied the Starr Offices as their sole office location.   The 850 Third Avenue Lease has a remaining term of over five years through September 30, 2015.   Rent accrues under the 850 Third Avenue Lease at the rate of $ 72,044.83 per month through September 30, 2010 and then increases to $79,628.50 per month on October 1, 2010, for the duration of the lease.   As of the date of this report, rent has not been paid under the 850 Third Avenue Lease for at least three months, and rent will continue to accrue as a liability of the Starrco receivership estate until the premises are vacated.   In fairness to the landlord, and as a matter of economic necessity for the Starrco Receivership Estate, it is therefore a very high priority of the Receiver to vacate the 850 Third Avenue premises as soon as possible and, simultaneously upon vacating the premises, to have the 850 Third Avenue Lease deemed rejected.

In addition to the lease for the Starr Companies' offices, Starrco has a lease with Ricoh Americas Corporation ("Ricoh") dated as of June 19, 2009 for its photocopy machines and related equipment (the "Copier Lease").   Those machines were in heavy use during June and July and part of August, 2010 because former employees of Starrco, and other representatives of former clients, were using those machines to make copies of client files that were particularly

time sensitive, whether for tax preparation purposes or simply to avoid defaults in the payment of monthly bills. That process was completed to the extent reasonably possible during the early part of August, 2010, and accordingly, the Receiver made arrangements for Ricoh's collection agent, Asset Recovery Specialists, to pick up its copying machines on August 20, 2010. Since those machines have been removed from the Starr Offices and returned to the lessor, there should be no continuing accrual of administrative liability for the Receivership Estates, and the Receiver accordingly seeks to have the Copier Lease deemed rejected as of the date that the copy machines were removed from the Starr Offices.

The Receiver has also discovered that Starrco is the named tenant under a residential apartment lease (the 79th Street Lease) with Glenwood Management Corporation, as agent for 79th Street Realty LLC, for apartment 18B located at 350 East 79th Street, New York, New York (the "79th Street Apartment"). Based upon documentation available to the Receiver, it appears that, with the knowledge and consent of the landlord, the actual tenants of the 79th Street Apartment were at all times Kenneth Starr and his wife, Dianne Passage. The landlord has commenced an eviction proceeding against Starrco, Kenneth Starr and Dianne Passage and seeks back rent of $48,504.84 with interest allegedly due from March 1, 2010. The 79th Street Apartment is of no use or benefit to the Receivership Estates, and has never been of use or benefit to the Starr Companies, and therefore the Receiver does not intend to oppose the landlord's eviction action. Rather, the Receiver seeks by this motion to have the 79th Street Lease deemed rejected. Mr. Starr and Ms. Passage may, to the extent they are able and inclined to do so, work out any arrangements that they wish with the landlord to continue, or resume, their residence at the 79th Street Apartment at their own expense.

### III.   AUTHORITIES

**A.     The Receiver's Proposed Disposition of Starrco's Furniture and Office Equipment Should be Approved**

A common-law equity receiver has the power to dispose of property of the receivership estate when it appears that a receivership is continuing an enterprise that does not show evident signs of working out for the benefit of the creditors. *See Jones v. Proctorville*, 290 F.2d 49, 50 (6th Cir. 1961).   Courts appointing a receiver "should see that the business is liquidated as economically and speedily as possible, unless its continuance is demonstrably beneficial to creditors." *Id.* (citing *Kingsport Press, Inc. v. Brief English Systems*, 54 F.2d 497, 501 (2d Cir. 1931)).   Indeed, when an asset within the receivership estate has become a drain upon the estate as a whole, the district court has broad discretion to authorize the receiver to abandon the asset so as to preserve the estate as a whole. *See Denver & R. G. W. R. Co. v. Commissioner*, 32 T.C. 43, 54 (1959) (district court authorized receiver to abandon operation of a railroad when it had become impossible for the receiver to make a profit); *Iowa v. Old Colony Trust Co.*, 215 F. 307, 312-15 (8th Cir. 1914) (same).

The Judicial Code governs the sale of personal property by a receiver.   Regarding the sale of personal property, under § 2004, the Court can authorize the Receiver to forego the provisions in 28 U.S.C. § 2001 that generally govern judicial sales. *See 28 U.S.C. § 2004*; *SEC v. Kirkland*, No. 6:06-183-0r1-28KRS, 2008 WL 4264532 (M.D. Fla. Sept. 12, 2008) (authorizing deviation from requirements of 28 U.S.C. § 2001 where compliance with procedures would be cost-prohibitive).   Given that the businesses of the of Receivership Estates are no longer operational, the disposition of furniture, equipment, and other personal property or related services, and the corollary process of compromising and settling claims made against the Receivership Estates, are

- 12 -

just and appropriate acts the Receiver should be authorized to carry out in connection with her ability to protect the assets, and manage the businesses, of the Receivership Estates.

With respect to the furniture and office equipment at the Starr Offices, the Receiver, through her retained professionals, communicated with at least four expert liquidators over the course of a month in both New York and New Jersey in an effort to generate proceeds from the sale of such property. After examining the aforementioned property, each of the liquidators determined that the property, considered collectively, was worthless and offered to dispose of such property for a cost. The Receiver believes, based in part upon the assessments of the professional liquidators, and partly on her own experience, that disposing of the Starrco furniture and equipment in a single transaction with a liquidator would be more beneficial than attempting to sell or auction off the more valuable items in lots or individually. The process of selling individual items would be too time consuming and would leave the Receiver with the less valuable furniture and equipment to dispose of at a price no doubt substantially in excess of the price that BAC will charge to dispose of all of the furniture and equipment at one time. Given the fact that rent, or use and occupancy, will continue to accrue at the 850 Third Avenue premises until those premises are vacated, the most beneficial alternative available to the Receiver is a wholesale disposition of the Starrco furniture and equipment through BAC. As noted *supra*, it is possible that Starrco's landlord may permit the Receiver to leave Starrco's furniture and office equipment in place and nevertheless be deemed to have vacated the premises. If that alternative becomes available, the Receiver would accept it. Absent that alternative, however, the Receiver would engage BAC to dispose of the Starr Office property at the cost of $11,900.00, and the Receiver hereby seeks an Order of this Court authorizing her to do so.

The Receiver also anticipates that she may hereinafter identify additional personal property of the Receivership Estates that she determines is of no value, or *de minimis* value, and should be abandoned. The Receiver proposes that any such personal property be deemed abandoned, without additional order of this Court, upon ten (10) day's written notice to parties in interest given by filing such notice on the docket of this action and by mailing such notice by first class mail to any party known to claim or assert an interest in the property to be abandoned; provided that such abandonment would be subject to the right of any interested party to contest the Receiver's intention to abandon such property in this Court prior to the expiration of the aforesaid notice period.

**B.    The Receiver's Rejection of Leases and Contracts Should be Authorized**

The Preliminary Injunction Order directs and authorizes the Receiver to "take and retain immediate possession, custody, and control of all assets and property and the books and records of original entry of SIA, Starrco and Colcave" and "take all steps he/she deems necessary to secure and protect the assets and property SIA, Starrco, and Colcave, including but not limited to the premises, files, and information systems." *Preliminary Injunction* ¶ A, B. The Receiver, as an arm of the Court and with the inherent power of an equity receiver at common law, need not seek further court authorization before deciding to reject a lease or executory contract. Ralph Ewing Clark, *A Treatise on the Law & Practice of Receivers* (3d. ed. 1992) § 442(a); *Sunflower Oil Co. v. Wilson*, 142 U.S. 313, 322 (1892). It is also well settled that a receiver is not bound to adopt a lease, if in the receiver's opinion it would be unprofitable or undesirable. *See, e.g., Bloch v. Bell Furniture Co.*, 162 A. 414 (N.J. 1932); *Toushin v. Gonsky*, 395 N.E. 2d 1124, 1129 (Ill. App. Ct. 1979) (by virtue of appointment, receiver does not become liable under a lease made prior to his appointment, but has a right to elect whether he will adopt the lease or reject it

if he finds it is of no value to the estate); *People ex rel. Nelson v. West Town State Bank*, 25 N.E. 2d 509, 511 (Ill. 1940) (same). The procedures a receiver must follow in rejecting leases and executory contracts are not expressly defined in statute or case law. Accordingly, to maximize efficiency and to provide an orderly structure to the process, the Receiver seeks Court approval to reject certain leases described herein.

As discussed above, Starrco is party to (1) the 850 Third Avenue Lease for the Starr Offices and (2) the 79th Street Lease for the 79th Street Apartment. The Receiver has determined that it would be in the best interest of Starrco's Receivership Estate to reject those leases. The Receiver is working expeditiously to vacate the Starr Offices as soon as practicable and therefore seeks an Order of this Court rejecting the 850 Third Avenue Lease effective immediately upon the date that the premises are vacated. With regard to the 79th Street Lease, since the 79th Street Apartment has never been used or occupied by Starrco, and is of no use or benefit to the Receivership Estates, the 79th Street Lease should be deemed rejected by Order of this Court *nunc pro tunc* to May 27, 2010, the commencement of this Receivership Action.

As further discussed above, Starrco leased its copy machines from Ricoh pursuant to the Copier Lease. Since the Receiver has already turned those copy machines over to the collection agent for Ricoh, the Receiver requests that the Copier Lease between Starrco and Ricoh he deemed rejected *nunc pro tunc* to the date of the return of such property, August 20, 2010.

The Receiver anticipates that she may hereafter identify additional leases and contracts that need to be rejected. The Receiver proposes that any leases or contracts the Receiver identifies subsequent to the entry of an order granting this Motion be deemed rejected, without additional Order of this Court, upon the later of: (a) the tenth (10th) day after written notice of such rejection is filed on the docket of this action and mailed by first class mail to the

counterparty to the applicable lease or contract at the counterparty's address as specified in the applicable lease or contract (or at such other address as may have been specified by the counterparty in writing); or (b) with respect to a lease of real or personal property under which a Receivership Company is the lessee, the date on which the property that would be subject to the lease is vacated or turned over by the Receiver to the lessor; provided that any such rejection is subject to the right of the applicable counterparty or any other party in interest to contest the rejection of such lease or contract in this Court prior to the expiration of the aforesaid notice period.

## IV.   CONCLUSION AND REQUEST FOR RELIEF

The Receiver requests that the Court grant this Motion in all respects, and accordingly issue an Order in the proposed form attached hereto as Exhibit "B", and grant such other relief as the Court may deem just and equitable.

Dated: New York, New York
        September 13, 2010                    Respectfully submitted,


                                    By:   /s/Lee W. Stremba
                                          Lee W. Stremba
                                    Troutman Sanders, LLP
                                    Counsel to the Receiver
                                    The Chrysler Building
                                    405 Lexington Avenue
                                    New York, New York 10174
                                    (P) 212-704-6000
                                    lee.stremba@troutmansanders.com

1423456v1                              - 16 -

# EXHIBIT A

**2007 DEPRECIATION AND AMORTIZATION REPORT**
Accounting & Business Management

OTHER 1

| Asset No. | Description | Date Acquired | Method | Life | Line No. | Unadjusted Cost Or Basis | Bus % Excl | * Reduction In Basis | Basis For Depreciation | Accumulated Depreciation | Current Sec 179 | Current Year Deduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Computers | 070190SL | | 5.00 | 16 | 192419. | | | 192419. | 192419. | | 0. |
| 2 | Computers | 070192SL | | 5.00 | 16 | 23056. | | | 23056. | 23056. | | 0. |
| 3 | Computers | 070193SL | | 5.00 | 16 | 36968. | | | 36968. | 36968. | | 0. |
| 4 | Computers | 070194SL | | 5.00 | 16 | 54690. | | | 54690. | 54690. | | 0. |
| 5 | Computers | 070195SL | | 5.00 | 16 | 33309. | | | 33309. | 33309. | | 0. |
| 6 | Computers | 070196SL | | 5.00 | 16 | 64423. | | | 64423. | 64423. | | 0. |
| 7 | Furnitures & Fixtures | 070196SL | | 5.00 | 16 | 94303. | | | 94303. | 94303. | | 0. |
| 8 | Equipment | 070196SL | | 5.00 | 16 | 12528. | | | 12528. | 12528. | | 0. |
| 9 | Equipment | 070197SL | | 5.00 | 16 | 538. | | | 538. | 538. | | 0. |
| 10 | Computers | 070197SL | | 5.00 | 16 | 53648. | | | 53648. | 53648. | | 0. |
| 11 | Equipment | 070198200DB | 5.00 | 17 | 2767. | | | 2767. | 2767. | | 0. |
| 12 | Furniture & Fixtures | 070198200DB | 7.00 | 17 | 2799. | | | 2799. | 2799. | | 0. |
| 13 | Equipment | 070198200DB | 5.00 | 17 | 3540. | | | 3540. | 3540. | | 0. |
| 14 | Computers | 070198200DB | 5.00 | 17 | 14374. | | 14374. | | | | 0. |
| 15 | Furniture & Fixtures | 070198200DB | 7.00 | 17 | 7284. | | | 7284. | 7283. | | 0. |
| 16 | L/H Improvements | 070190SL | | 7.00 | 16 | 40650. | | | 40650. | 40650. | | 0. |
| 17 | L/H Improvements | 070195SL | | 8.00 | 16 | 3403. | | | 3403. | 3403. | | 0. |
| 18 | L/H Improvements | 070196SL | | 9.00 | 16 | 75136. | | | 75136. | 75136. | | 0. |

728702
04-27-07

7.1

(D) - Asset disposed

* ITC, Section 179, Salvage, Bonus, Commercial Revitalization Deduction, GO Zone

**2007 DEPRECIATION AND AMORTIZATION REPORT**
**Accounting & Business Management**

OTHER                                                                                       1

| Asset No. | Description | Date Acquired | Method | Life | Line No. | Unadjusted Cost Or Basis | Bus % Excl | Reduction In Basis * | Basis For Depreciation | Accumulated Depreciation | Current Sec 179 | Current Year Deduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19 | L/H Improvement | 070197 | SL | 8.00 | 16 | 4323. | | | 4323. | 4323. | | 0. |
| 20 | L/H Improvement | 070198 | SL | 7.00 | 16 | 1829. | | | 1829. | 1829. | | 0. |
| 21 | Furniture & Fixtures | 070197 | SL | 5.00 | 16 | 38617. | | | 38617. | 38617. | | 0. |
| 22 | Equipment | 070199 | 200DB | 5.00 | 17 | 2116. | | | 2116. | 2116. | | 0. |
| 23 | Computers | 070199 | 200DB | 5.00 | 17 | 70928. | | 19000. | 51928. | 51928. | | 0. |
| 24 | Furniture & Fixtures | 070199 | 200DB | 5.00 | 17 | 25677. | | | 25677. | 25676. | | 0. |
| 25 | L/H Improvements | 070199 | SL | 39.00 | 16 | 5000. | | | 5000. | 5000. | | 0. |
| 26 | Equipment | 070100 | 200DB | 5.00 | 17 | 3473. | | | 3473. | 3473. | | 0. |
| 27 | Computers | 070100 | 200DB | 5.00 | 17 | 37870. | | | 37870. | 37870. | | 0. |
| 28 | Furniture & Fixtures | 070100 | 200DB | 7.00 | 17 | 30153. | | | 30153. | 28807. | | 1346. |
| 29 | L/H Improvements | 070100 | SL | 39.00 | 17 | 481454. | | | 481454. | 481454. | | 0. |
| 30 | Equipment | 070101 | 200DB | 5.00 | 17 | 346. | | | 346. | 346. | | 0. |
| 31 | Furniture & Fixtures | 070101 | 200DB | 7.00 | 17 | 39680. | | | 39680. | 34368. | | 3541. |
| 32 | Computers | 070101 | 200DB | 5.00 | 17 | 65704. | | 24000. | 41704. | 41704. | | 0. |
| 33 | L/H Improvements | 070101 | SL | 39.00 | 17 | 163858. | | | 163858. | 163858. | | 0. |
| 34 | Equipment | 070102 | 200DB | 5.00 | 17 | 1074. | | 322. | 752. | 709. | | 43. |
| 35 | Computers | 070102 | 200DB | 5.00 | 17 | 49292. | | 31588. | 17704. | 16684. | | 1020. |
| 36 | Furnishings & Fixtures | 070102 | 200DB | 7.00 | 17 | 6375. | | 1913. | 4462. | 3466. | | 398. |

(D) - Asset disposed

* ITC, Section 179, Salvage, Bonus, Commercial Revitalization Deduction, GO Zone

**2007 DEPRECIATION AND AMORTIZATION REPORT**
**Accounting & Business Management**

OTHER 1

| Asset No. | Description | Date Acquired | Method | Life | Line No. | Unadjusted Cost Of Basis | Bus % Excl | Reduction In Basis | Basis For Depreciation | Accumulated Depreciation | Current Sec 179 | Current Year Deduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 37 | Leasehold Improvements | 070102 | SL | 39.00 | 17 | 11453. | | | 11453. | 11453. | | 0. |
| 38 | Equipment | 070103 | 200DB | 5.00 | 17 | 675. | | 675. | | | | 0. |
| 39 | Computers | 070103 | 200DB | 5.00 | 17 | 47293. | | 47293. | | | | 0. |
| 40 | Furnishings & Fixtures | 070103 | 200DB | 7.00 | 17 | 10322. | | 10322. | | | | 0. |
| 41 | Leasehold Improvements | 070103 | SL | 39.00 | 17 | 2464. | | 2464. | | | | 0. |
| 42 | Equipment | 070104 | 200DB | 5.00 | 17 | 3758. | | 3758. | | 1232. | | 0. |
| 43 | Computer Equipment | 070104 | 200DB | 5.00 | 17 | 29442. | | 29442. | | | | 0. |
| 44 | Furniture & Fixtures | 070104 | 200DB | 7.00 | 17 | 847. | | 847. | | | | 0. |
| 45 | Equipment | 070105 | 200DB | 5.00 | 17 | 20641. | | 20641. | | | | 0. |
| 46 | Computer Equipment | 070105 | 200DB | 5.00 | 17 | 59121. | | 59121. | | | | 0. |
| 47 | Furniture & Fixtures | 070105 | 200DB | 7.00 | 17 | 342810. | 22666. | | 320144. | 124138. | | 56002. |
| 48 | Leasehold Improvements | 070105 | SL | 39.00 | 17 | 509003. | | | 509003. | 19033. | | 13051. |
| 49 | Capitalized Architect & Engineering Fees | 070105 | 468M | 43 | | 193053. | | | 193053. | 7425. | | 4950. |
| 50 | LEASEhold Improvements | 070105 | SL | 39.00 | 17 | 7879. | | | 7879. | 7879. | | 0. |
| 51 | Equipment | 070106 | 200DB | 5.00 | 17 | 6195. | | | 6195. | 1239. | | 1982. |
| 52 | Computers | 070106 | 200DB | 5.00 | 17 | 45030. | | | 45030. | 9006. | | 14410. |
| 53 | Furniture & Fixtures | 070106 | 200DB | 7.00 | 17 | 65166. | | | 65166. | 9310. | | 15959. |
| 54 | Leasehold Improvements | 070106 | SL | 39.00 | 17 | 87984. | | | 87984. | 1034. | | 2256. |

728102
04-27-07

(D) - Asset disposed

* ITC, Section 179, Salvage, Bonus, Commercial Revitalization Deduction, GO Zone

7.3

**2007 DEPRECIATION AND AMORTIZATION REPORT**
**Accounting & Business Management**

OTHER 1

728102
04-27-07

| Asset No. | Description | Date Acquired | Method | Life | Line No. | Unadjusted Cost Or Basis | Bus % Excl | Reduction In Basis | Basis For Depreciation | Accumulated Depreciation | Current Sec 179 | Current Year Deduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 55 | Fees - Capitalized Architect | 070106 | M | 468 | 43 | 13090. | | | 13090. | | | 336. |
| 56 | Equipment | 070107 | 200DB | 5.00 | 19B | 5304. | | | 5304. | | | 1061. |
| 57 | Computer Equipment | 070107 | 200DB | 5.00 | 19C | 41470. | | | 41470. | | | 8294. |
| 58 | Furnishings & Fixtures | 070107 | 200DB | 7.00 | 19C | 6653. | | | 6653. | | | 951. |
| 59 | L/H Improvement | 070107 | SL | 39.00 | 19I | 1439. | | | 1439. | 168. | | 17. |
| | * Total Other Depreciation & Amort | | | | | 3254696. | | 288426. | 2966270. | 1835605. | | 125617. |
| | Current Year Activity | | | | | | | | | | | |
| | Beginning balance | | | | | 3199830. | | 288426. | 2911404. | 1835605. | | |
| | Acquisitions | | | | | 54866. | | 0. | 54866. | 0. | | |
| | Dispositions | | | | | 0. | | 0. | 0. | 0. | | |
| | Ending balance | | | | | 3254696. | | 288426. | 2966270. | 1835605. | | |

7.4

(D) - Asset disposed

* ITC, Section 179, Salvage, Bonus, Commercial Revitalization Deduction, GO Zone

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,         :
                                            :
                              Plaintiff,    :
                                            :        10 CIV. 4270 (SHS)
        -against-                           :
                                            :
KENNETH IRA STARR, STARR INVESTMENT         :
ADVISORS, LLC, and STARR & COMPANY, LLC,    :
                                            :
                              Defendants,   :
                                            :
DIANE PASSAGE and COLCAVE, LLC,             :
                                            :
                      Relief Defendants.    :
                                            :
---------------------------------------------------------------------- x


## ORDER APPROVING RECEIVER'S PROPOSED
## DISPOSITION OF CERTAIN FURNITURE AND EQUIPMENT
## AND THE REJECTION OF CERTAIN LEASES AND CONTRACTS

        Upon consideration of the Receiver's Motion to Approve the Disposition of

Certain Furniture and Equipment and the Rejection of Certain Leases and Contracts (the

"Motion")[1] and after due deliberation thereon; and good and sufficient cause appearing therefore,

it is hereby:

## FOUND AND DETERMINED THAT:

        A.      Having the full power of an equity receiver at common law, the Receiver has the

inherent power to reject executory contracts and leases;

        B.      The Preliminary Injunction Order grants the Receiver the power to "take and

retain immediate possession, custody, and control of all assets and property and the books and

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

records of original entry of SIA, Starrco and Colcave" and "take all steps he/she deems necessary to secure and protect the assets and property SIA, Starrco, and Colcave, including but not limited to the premises, files, and information systems."

      C.     Having the full power of an equity receiver at common law and under the Preliminary Injunction Order, the Receiver has the authority to dispose of contracts and leases belonging to the Receivership Estates, wherever situated anywhere in the world;

      D.     The Receiver has the authority to abandon or dispose of estate assets, including without limitation furniture, equipment, and other property;

It is therefore **ORDERED, ADJUDGED, AND DECREED THAT:**

      1.     The Motion is **GRANTED**;

      2.     The Receiver is authorized to dispose of Starrco's furniture and office equipment in the manner set forth in the Motion;

      3.     The unexpired 850 Third Avenue Lease shall be deemed rejected by the Receiver effective immediately upon the vacation of the Starr Offices by the Starr Companies;

      4.     The unexpired 79th Street Lease shall be deemed rejected by the Receiver *nunc pro tunc* to May 27, 2010;

      5.     The Copier Lease shall be deemed rejected by the Receiver *nunc pro tunc* to August 20, 2010;

      6.     The Receiver is hereby authorized, without further Order of this Court, to reject additional leases or contracts of the Receivership Estates, in her sound discretion, such rejection to be effective upon the later of: (a) the tenth (10th) day after written notice of such rejection is filed on the docket of this action and mailed by first class mail to the counterparty to the applicable lease or contract at the counterparty's address as specified in the applicable lease or

contract (or at such other address as may have been specified by the counterparty in writing); or (b) with respect to a lease of real or personal property under which a Receivership Compan is the lessee, the date on which the property that is subject to the lease is vacated or turned over by the Receiver to the lessor; provided that any such rejection is subject to the right of the applicable counterparty or any other party in interest to contest the rejection of such lease or contract in this Court prior to the expiration of the aforesaid notice period;

   7.  The Receiver is authorized, without further Order of this Court, to abandon personal property of the Receivership Estates which she determines, in her sound discretion, to be of no value, or of *de minimis* value, to the Receivership Estates, upon ten (10) day's written notice to parties in interest given by filing such notice on the docket of this action and by mailing such notice by first class mail to any party known to claim or assert an interest in the property to be abandoned; provided that such abandonment is subject to the right of any interested party to contest the Receiver's intention to abandon such property in this Court prior to the expiration of the aforesaid notice period.

   Signed and to be effective as of September ___, 2010.


           _____

           HONORABLE SIDNEY H. STEIN
           UNITED STATES DISTRICT JUDGE