TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: 212-704-6000
Fax: 212-704-6288
Lee W. Stremba

*Attorneys for Receiver Aurora Cassirer*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
SECURITIES AND EXCHANGE COMMISSION,  :
:
Plaintiff,  :
:   10 CIV. 4270 (SHS)
-against-  :
:
KENNETH IRA STARR, STARR INVESTMENT  :
ADVISORS, LLC, and STARR & COMPANY, LLC,  :
:
Defendants,  :
:
DIANE PASSAGE and COLCAVE, LLC,  :
:
Relief Defendants.  :
------------------------------------------------------------------ x

## RECEIVER'S RESPONSE TO APPLICATION OF LUX CONDOMINIUM BOARD OF MANAGERS TO COMPEL PAYMENT OF COMMON CHARGES

Aurora Cassirer, Esq., in her capacity as receiver (the "Receiver") for Colcave LLC ("Colcave"), appointed in the above-captioned case (the "Receivership Action") by Order of this Court dated July 8, 2010 (the "Preliminary Injunction Order") (Docket No. 19), hereby responds to the application of Lux Condominium Board of Managers ("Lux") for an Order requiring the Receiver to pay common charges due to Lux with respect to the condominium unit owned by

Colcave located at 433 East 74th Street, New York, New York (the "Apartment").[1]

## I. PRELIMINARY STATEMENT

The Receiver is in agreement with Lux that the common charges accruing on the Colcave Apartment should be paid on a current basis. The mounting common charge arrearages associated with the Colcave Apartment constitute a hardship for the Lux condominium and other owners in that building. In the instant situation, it is unfair and unnecessary to subject Lux and the other owners to such a hardship because (i) Colcave has the cash resources to pay those common charges, and (ii) the common charges constitute a lien on the Apartment which will have to be satisfied in any event when the Apartment is sold by the Government.

As described below, Colcave has sufficient funds to pay the common charge arrears owed to Lux and to pay future common charges on a current basis. Unfortunately, as a result of freezes imposed upon funds held in Colcave's bank account, the Receiver does not have, and has never had, access to Colcave's cash. As a result, the Receiver does not have the means to pay the Lux common charges. Rather, if such charges are to be paid, it will be necessary for the Government to release funds from the Colcave bank account for that purpose, either on the Government's own volition or upon a direction from this Court.

The Receiver and her counsel have communicated on several occasions with representatives of Lux regarding the accruing and unpaid common charges and have also communicated on several occasions with representatives of the United States to seek to have funds in the Colcave Account used to pay those liabilities on a current basis. Those communications have not been successful to date, with the result that Lux had filed its

---

[1] For the avoidance of confusion, we note that references in this Motion to the United States or to the Government include the Department of Justice, the United States Attorney's Office or the Internal Revenue Service, but do not include the SEC. Conversely, references to the SEC do not include the Department of Justice, the United States Attorney's Office or the Internal Revenue Service.

Application.

## II.   BACKGROUND

### A.   The Colcave Receivership

On May 27, 2010, the SEC commenced the within lawsuit in this Court against the above-captioned Defendants and Relief Defendants. The SEC alleges in its Complaint that the Defendants perpetrated a fraudulent scheme, abusing the signatory power they had over their clients' bank and investment accounts and misappropriating client funds for their own purposes, and as a result directly or indirectly engaged in acts in violation of the Investment Advisers Acts of 1940 (the "Advisers Act"). *Complaint.* 2-7.

The Court found good cause to believe that the Defendants violated the Advisers Act. Accordingly, on May 27, 2010, the Court entered an Order (Docket No. 2) imposing, among other things, asset freezes against the Defendants and the Relief Defendants and a constructive trust over the Colcave Apartment, which was purchased in April of 2010 for approximately $7.5 million. The SEC alleges that the Apartment was purchased by Colcave (an entity organized by Kenneth Starr) with funds misappropriated from accounts of clients of Defendant Starr & Company, LLC ("Starrco").

By Order of this Court dated June 1, 2010 (Docket No. 5), Aurora Cassirer, Esq. was appointed interim monitor for Starrco, Starr Investment Advisors, LLC ("SIA") and Colcave. Ms. Cassirer's tenure as interim monitor continued until June 7, 2010, when this Court issued an Order (Docket No. 13) appointing Ms. Cassirer temporary receiver for the those three entities (the "Receivership Estates") and granted her the authority to retain immediate custody and control of all assets and property of the Receivership Estates, and take all steps necessary to protect such assets and property.

On July 8, 2010, this Court entered a further Order (the "Preliminary Injunction Order") (Docket No. 19): (a) preliminarily enjoining the Defendants from violating the Advisers Act; (b) freezing assets of the Defendants and Relief Defendants; (c) requiring the Defendants and Relief Defendants to render accountings; (d) preventing the Defendants and Relief Defendants from destroying, concealing or altering any books, records, documents, electronic data or computer files; and (e) appointing the Receiver on a permanent basis over the Receivership Estates, with all of the powers set forth in the Preliminary Injunctions.

### B.     The Colcave Receivership

Based upon the Receiver's review of available documents and government pleadings, and interviews of key Starrco employees, it appears that Starr is the sole member of Colcave. Colcave was formed by defendant Kenneth Starr ("Starr") for the purpose of acquiring the East 84th Street Apartment, which was the principal place of abode of Starr and his wife, Dianne Passage, at the time of Starr's arrest. In or about April, 2010, Starr, in the name of Colcave, purchased the Apartment for $7.5 million. Subsequently, Starr borrowed $4,000,000 collectively from two lenders and granted mortgages on the apartment as collateral for the loans (the "Mortgages"). Of the amount borrowed, $716,971.57 (the "Colcave Funds") remained in a Colcave bank account at Signature Bank (the "Colcave Account") at the time of Starr's arrest, and remains in that account to this day.

Since Colcave does not conduct any income-producing business, the assets of Colcave are essentially fixed. Those assets consist of the Colcave Funds, in the amount of $716,971.57, and the Apartment.[2] The Receiver has not had the Apartment professionally appraised, but given

---

[2] The Mortgages entered into by Colcave required that $250,000 of the proceeds of the first Mortgage and $125,000 of the proceeds of the second Mortgage be escrowed as reserves for the payment of interest on the loans. The Government has indicated that the reserves for the first Mortgage have been exhausted and the reserves for the second Mortgage will be exhausted in the near future.

the fact that the Apartment was purchased within the past year, it is not unreasonable to assume that the Apartment is worth substantially what Starr paid for it.

The Colcave Funds have at all times during the Receivership been frozen by Orders entered at the behest of the SEC and the United States, and accordingly, those funds have not been available to the Receiver for any purpose. To the Receiver's knowledge, there have been no deposits into that account or withdrawals from that account during the Receivership. Upon her appointment as Receiver, Ms. Cassirer did open a Colcave receivership bank account, but there have been no funds deposited into that account.

Colcave's known liabilities (excluding any liabilities for fees and expenses of the Receiver and her counsel) consist of the Mortgages and common charges owed to the condominium association for the Apartment. Based upon the stated interest rate of 12.5% (not the default rate) in the loan documents for each of these two Mortgages, interest on the Mortgages accrues at the rate of approximately $41,700 per month. The Receiver understands that interest accrued on the Mortgages since the commencement of the receivership has been paid out of the escrows established using proceeds of the mortgage loans. Common charges for the Apartment accrue at the rate of $7,038.48 per month and, as of April 1, 2010, totaled $77,423.28 (exclusive of late charges). The accrued common charges remain due and owing, and the condominium association has commenced a lawsuit seeking payment of those arrears.[3]

C.   **The Criminal Proceedings**

On or about June 10, 2010, an Indictment, 10 Cr. 520 (SAS) (the "Indictment"), was filed charging the defendant Starr with twenty counts of wire fraud (Counts One through Twenty) in violation of Title 18, United States Code, Section 1343; one count of money laundering in

---

[3] The action, entitled Lux Condominium, by its Board of Managers v. Colcave, LLC, et al., was commenced on or about December 14, 2010.

violation of Title 18, United States Code, Section 1956(a)(1) (Count Twenty-One); one count of fraud by an investment advisor in violation of Title 15, United States Code, Sections 80b-6 and 80b-17 (Count Twenty-Two); and one count of securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a) (Count Twenty-Three). The Indictment contains a forfeiture allegation providing notice that, as a result of the offenses charged in the Indictment, the defendant shall forfeit to the United States any and all property constituting or derived from any proceeds obtained directly or indirectly as a result of the alleged wire, money laundering and security fraud offenses.

On or about September 10, 2010, Starr pled guilty to Counts Nine, Twenty-One and Twenty-Two of the Indictment pursuant to a plea agreement (the "Plea Agreement") with the Government. Under the terms of the Plea Agreement, Starr admitted the forfeiture allegation in the Indictment and agreed to forfeit to the United States all right, title and interest in the Apartment and all "improvements and attachments thereto." On March 4, 2011, the Honorable Shira A. Sheindlin, who presides over the Government's criminal actions, entered a Consent Preliminary Order of Forfeiture (the "Forfeiture Order") pursuant to which the Apartment was forfeited by Kenneth Starr to the Government, subject only to possible claims of third parties who might assert an interest in the property.

From the earliest days of the Colcave receivership, the Receiver and her counsel have communicated regularly with representatives of the United States to encourage efforts to sell the Colcave Apartment so that the Colcave estate can minimize its accruing liability for debt service and common charges and thereby maximize the sale proceeds available to provide a recovery to victims of Starr's fraudulent activities. The Government has consistently maintained that it would, through the mechanism of its forfeiture proceedings against Starr, sell the Apartment as

soon as practicable. The Government has accordingly requested that the Receiver not take steps to market or sell the Apartment, and the Receiver has to date cooperated with the Government in that regard. The Receiver is hopeful that the Forfeiture Order will serve to expedite a sale of the Apartment.

### III.   CONCLUSION AND REQUEST FOR RELIEF

Although the Government has not yet obtained a forfeiture order specifically for the Colcave Funds, the Receiver fully expects that those funds will be forfeited to the Government along with the Apartment. For this reason, it is respectfully submitted that the Receivership for Colcave does not serve any useful purpose and should be terminated. Should it be necessary for the Receiver to file a formal motion for that purpose, she will do so in the near future.

At this time, however, the Receiver submits that she is unable to pay common charges accrued for the Colcave Apartment and therefore the Order requested by Lux would serve no purpose. If the common charge arrears are to be paid, the Government will have to release funds from the Colcave Account to do so.

Dated: New York, New York  
March 30, 2011

Respectfully submitted,

By:   /s/*Lee W. Stremba*  
Lee W. Stremba  
Troutman Sanders, LLP  
Counsel to the Receiver  
The Chrysler Building  
405 Lexington Avenue  
New York, New York 10174  
212-704-6000  
lee.stremba@troutmansanders.com