USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11 15 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

KENNETH IRA STARR, STARR
INVESTMENT
ADVISORS, LLC, STARR & COMPANY, LLC,
AND JONATHAN S. BRISTOL

Defendants,

DIANE PASSAGE AND COLCAVE, LLC

Relief Defendants.

10 CIV 4270 (SHS)

## JUDGMENT AS TO DEFENDANT JONATHAN S. BRISTOL

The Securities and Exchange Commission having filed a Complaint and Defendant
Jonathan S. Bristol ("Defendant") having entered a general appearance; consented to the Court's
jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final
Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from
this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and
Defendant's agents, servants, employees, attorneys, and all persons in active concert or
participation with them who receive actual notice of this Judgment by personal service or
otherwise are permanently restrained and enjoined from violating Sections 206(1) and 206(2) of

the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)],

by using the mails or any means or instrumentality of interstate commerce, directly or indirectly:

> (a) to employ any device, scheme or artifice to defraud any client or prospective client; or

> (b) to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that based upon the anticipated sentence that Bristol will receive pursuant to his guilty plea in *United States v. Bristol*, 10 Cr. 1239 (S.D.N.Y.) (DAB), the Court is not ordering Bristol to pay a civil penalty. If at any time following the entry of this Final Judgment the Commission obtains information indicating that Bristol knowingly provided materially false or misleading information or materials to the Commission or in a related proceeding, the Commission may, at its sole discretion and without prior notice to Bristol, petition the Court for an order requiring Bristol to pay a civil penalty. In connection with any such petition and at any hearing held on such a motion: (a) Bristol will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Bristol may not challenge the validity of this Final Judgment or his consent hereto, dated November 7, 2012 and filed herewith (the "Consent"); (c) the allegations of the Complaint, solely for the purposes of such motion, shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence without regard to the standards for summary judgment contained in Rule

2

56(c) of the Federal Rules of Civil Procedure. Under these circumstances, the parties may take discovery, including discovery from appropriate non-parties.

III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

V.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: November 15, 2012

_____
HONORABLE SIDNEY H. STEIN
UNITED STATES DISTRICT JUDGE

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | 10 CIV 4270 (SHS) |
| KENNETH IRA STARR, STARR INVESTMENT ADVISORS, LLC, STARR & COMPANY, LLC, AND JONATHAN STAR BRISTOL | |
| Defendants, | |
| DIANE PASSAGE AND COLCAVE, LLC | |
| Relief Defendants. | |

## CONSENT OF DEFENDANT JONATHAN S. BRISTOL

1.     Defendant Jonathan S. Bristol ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and consents to the Court's jurisdiction over Defendant and over the subject matter of this action.

2.     Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action.  Specifically, in *United States v. Bristol*, 10 Cr. 1239 (S.D.N.Y.) (DAB) ("*United States v. Bristol*"), Defendant pleaded guilty to one count of conspiracy to commit money laundering [18 U.S.C. § 1956].

3.     In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent.  This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. Bristol*.

1

3.     Defendant hereby consents to the entry of the Final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a) permanently restrains and enjoins Defendant from any violations of Sections 206(1) or 206(2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)]; and

(b) does not order Defendant to pay a civil penalty based upon the anticipated sentence he will receive pursuant to his guilty plea in in the criminal case before the United States District Court for the Southern District of New York, titled *United States v. Bristol*, 10 Cr. 1239 (S.D.N.Y.) (DAB).

4.     Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

4.     Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

5.     Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

6.     Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

7.     Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

8.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant

2

of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

9.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

10.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant acknowledges the guilty plea for related criminal

3

conduct described in paragraphs 2 and 3 above, and agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

11.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

12.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices

4

and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

13.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

14.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: __11.7.12__

_____
Jonathan S. Bristol

On __11/7__, 2012, Jonathan S. Bristol, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

_____
Notary Public
Commission expires:

Approved as to form:

_____
Susan Kellman, Esq.
25 8th Ave
Brooklyn, NY 11217
Attorney for Defendant

PAMELA S STOLL
Notary Public
State of New Jersey
My Commission Expires Aug 4, 2016

5

1    152YBRIP

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ------------------------------x

4
     UNITED STATES OF AMERICA,
5
                    v.
6                                          10 Cr. 1239 (DAB)
     JONATHAN BRISTOL,
7

8                    Defendant.
9    ------------------------------x

10                                         May 2, 2011
                                           11:45 a.m.
11
     Before:
12
                HON. DEBORAH A. BATTS,
13
                                           District Judge
14

15                        APPEARANCES

16
     PREET BHARARA
17        United States Attorney for the
          Southern District of New York
18   MICHAEL BOSWORTH,
     WILLIAM HARRINGTON,
19        Assistant United States Attorneys

20
     SUSAN KELLMAN, ESQ.,
21        Attorney for Defendant

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

1          THE COURT:  United States of America versus Jonathan

2     Bristol.

3          Is the government ready?

4          MR. BOSWORTH:  Yes.  Michael Bosworth for the

5     defendant and with me is William Harrington from our office.

6          THE COURT:  On behalf of Mr. Bristol we have Ms. Susan

7     Kellman.

8          MS. KELLMAN:  Good morning.

9          And seated to my left is Mr. Bristol.

10         THE COURT:  Good morning, Mr. Bristol.

11         THE DEFENDANT:  Good morning, your Honor.

12         THE COURT:  The first order of business, I understand,

13    is to have Mr. Bristol arraigned, is that correct?

14         MS. KELLMAN:  That's correct, your Honor.

15         THE COURT:  Mr. Delaney.

16         THE CLERK:  You are Jonathan Bristol?

17         THE DEFENDANT:  I am.

18         THE CLERK:  This is your attorney, Ms. Kellman,

19    standing beside you?

20         THE DEFENDANT:  She is.

21         THE CLERK:  Is this your signature on this waiver of

22    indictment form?

23         THE DEFENDANT:  It is.

24         THE CLERK:  Do you realize by signing this document

25    you give up your right to have this case presented to a grand

1   jury which may or may not indict you?

2           THE DEFENDANT:  I do.

3           THE CLERK:  Do you waive the formal reading of the

4   information?

5           THE DEFENDANT:  I do.

6           THE CLERK:  How do you plead at this time?

7           THE DEFENDANT:  Not guilty.

8           THE COURT:  I have been informed by Ms. Kellman that

9   Mr. Bristol has an application, is that correct, Ms. Kellman?

10          MS. KELLMAN:  Yes, your Honor.

11          At this time my client has asked me to withdraw, ask

12  the court permission to withdraw his previously entered not

13  guilty plea and he wishes to enter a plea of guilty to the

14  information.

15          THE COURT:  Thank you, Ms. Kellman.

16          Mr. Delaney, please administer the oath to Mr.

17  Bristol.

18  JONATHAN BRISTOL,

19          the defendant, having first been duly sworn, was

20                  examined and testified as follows:.

21  BY THE COURT:

22  Q.  Mr. Bristol, do you understand that you are now under oath

23  and that if you answer any of my questions falsely, your false

24  or untrue answers may later be used against you in another

25  prosecution for perjury or making a false statement.

1    A.   Yes.

2    Q.   Mr. Bristol, what is your full name?

3    A.   Jonathan Star Bristol.

4    Q.   Your middle name again?

5    A.   Star, S-T-A-R with one R, not two R's.

6    Q.   And how old are you?

7    A.   I'm 55 years old, Judge Batts.

8    Q.   And how far did you go in school?

9    A.   Post-graduate.

10   Q.   Are you now or have you recently been under the care of a

11   doctor or psychiatrist?

12   A.   I am now under the care of a psychiatrist and a doctor.

13   Q.   All right.   In terms of the medications -- are you

14   receiving any medications either from the doctor or the

15   psychiatrist?

16   A.   I am, Judge Batts.

17   Q.   Do any of these medications affect your ability to

18   understand what you are doing today?

19   A.   No, Judge Batts.

20   Q.   Have you ever been treated or hospitalized for any mental

21   illness or any type of addiction, including drug or alcohol

22   addiction?

23   A.   No.

24   Q.   In the past 24 hours, have you taken any drugs, medicine or

25   pills other than the ones you just discussed or have you drunk

1    any alcohol?

2    A.  No, your Honor.

3    Q.  Is your mind clear today?

4    A.  Yes, your Honor.

5    Q.  Are you feeling well told?

6    A.  Yes, your Honor.

7            THE COURT:  Does any counsel have any doubt as to the

8    defendants to competence at this time?

9            Ms. Kellman?

10            MS. KELLMAN:  No, your Honor.

11            THE COURT:  Mr. Bosworth or Mr. Harrington?

12            MR. BOSWORTH:  No, your Honor.

13    BY THE COURT:

14    Q.  Mr. Bristol, your attorney has informed me that you wish to

15    withdraw your plea of not guilty to Count 1 of the information

16    and enter a plea of guilty.

17            Do you, in fact, wish to do that today?

18    A.  Yes, your Honor.

19    Q.  Have you had a full opportunity to discuss your case with

20    your attorney and to discuss the consequences of entering a

21    plea of guilty?

22    A.  Yes, your Honor.

23    Q.  Are you satisfied with your attorney, Ms. Kellman, and her

24    representation of you will?

25    A.  Quite satisfied, your Honor.

6

1          THE COURT:  On the basis of Mr. Bristol's responses to

2   my questions and my observations of his demeanor, I find that

3   he is fully competent to enter an informed plea at this time.

4          However, before I accept any plea, Mr. Bristol, I am

5   going to ask you certain questions.  My questions are intended

6   to satisfy me that you wish to plead guilty because you are

7   guilty and that you fully understand the consequences of your

8   plea.

9          If you do not understand a question, please stop me

10  and either ask me or your attorney, Ms. Kellman, for a further

11  explanation.

12          All right?

13  A.   Yes, your Honor.

14  Q.   I am now going to describe to you certain rights that you

15  have under the Constitution and laws of the United States.  You

16  will be giving up these rights if you enter a plea of guilty.

17  Please listen carefully because at the end of my description of

18  your rights I will ask you whether you have fully understood

19  what I have said.

20          All right?

21  A.   Yes, your Honor.

22  Q.   Under the Constitution and laws of the United States you

23  have the right to a speedy and public trial by a jury on the

24  charge against you which is contained in the information.

25          If there were a trial you would be presumed innocent

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    and the government would be required to prove your guilt by

2    competent evidence and beyond a reasonable doubt.  You would

3    not have to prove you were not guilty at a trial.

4            At trial and every other stage of the proceeding you

5    would have the right to be represented by an attorney and, if

6    you could not afford one, an attorney would be provided to you

7    free of cost.

8            If there were a trial you would have the right to see

9    and hear all of the witnesses against you and your attorney

10   could cross-examine them.  You would have the right to have

11   your attorney object to the government's evidence and offer

12   evidence on your behalf if you so desired and you would have

13   the right to have subpoenas issued to compel witnesses to

14   testify in your defense.

15           If there were a trial you would have the right to

16   testify if you wanted to, but no one could force you to testify

17   if you did not want to.  Further, the jury could not even

18   consider the fact that you chose not to testify at trial.

19           Mr. Bristol, do you understand each and every one of

20   these rights?

21   A.   Yes, your Honor.

22   Q.   You understand by entering a plea of guilty today you are

23   giving up each and every one of these rights and that you will

24   have no trial?

25   A.   Yes, your Honor.

8

1    Q.   You understand that you can change your mind right now and

2    refuse to enter a plea of guilty?

3    A.   Yes, your Honor.

4    Q.   You do not have to enter this plea if you do not want to

5    for any reason.

6          Do you understand this fully?

7    A.   Yes, your Honor.

8    Q.   Mr. Bristol, you have received a copy of the information,

9    haven't you?

10   A.   Yes, your Honor.

11   Q.   And you have read it?

12   A.   Yes, your Honor.

13   Q.   And you discussed it with your attorney?

14   A.   I have discussed it with my attorney, your Honor.

15   Q.   You understand that you have a constitutional right to be

16   charged by an indictment rather than an information?

17   A.   Yes, your Honor.

18   Q.   An indictment would be from a grand jury and not like the

19   information simply a charge by the prosecutor.

20          Do you understand that you have waived the right to be

21   charged by an indictment and that you have consented to being

22   charged by an information of the government?

23   A.   Yes, your Honor.

24   Q.   Did you waive this right voluntarily and knowingly?

25   A.   Voluntarily and knowingly, your Honor.

1    Q.   You understand that you are charged in the information with

2    conspiracy to --

3              THE COURT:   Let me confirm from the prosecutors, are

4    we talking about conspiracy to launder money or are we talking

5    about conspiracy to commit wire fraud?

6              MR. BOSWORTH:   Your Honor, it's conspiracy to commit

7    an offense against the United States, and in this case money

8    laundering.   So it's a violation in the first instance of Title

9    18, United States Code, Section 371, and the specific offense

10   against the United States that the information contemplates is

11   a violation of Title 18, United States Code, Section 1956,

12   various provisions and I am happy to outline the elements.

13             THE COURT:   You will in a minute, but I just wanted to

14   make sure that I advise Mr. Bristol his right to the

15   conspiracy.

16             MR. BOSWORTH:   Thank you.

17   BY THE COURT:

18   Q.   Mr. Bristol, do you understand you are charged in the

19   information with conspiracy to commit money laundering?

20   A.   Yes, your Honor.

21             THE COURT:   Now, Mr. Bosworth, can you please state

22   the elements of the charge to Mr. Bristol.

23             MR. BOSWORTH:   Thank you, your Honor.

24             The elements of 371 conspiracy are three:

25             First, the government would be required to prove

1  beyond a reasonable doubt that there existed a conspiracy to

2  commit an offense against the United States.

3      Second, that the defendant knowingly became a member

4  of that conspiracy.

5      And third that one of the co-conspirators took at

6  least one overt act in furtherance of the conspiracy.

7.     So far as the money laundering offense which is at

8  issue here is concerned, the elements would be as follows:

9      First, that the defendant -- it was part of the

10  agreement that the defendant would conduct a financial

11  transaction involving property that constituted the proceeds of

12  specified unlawful activity, in this case Ken Starr's wire

13  fraud.

14      Second, that the defendant knew that the property

15  involved in the financial transaction was the proceeds of some

16  form of unlawful activity.

17      And then third, and both provisions are alleged in the

18  information, that the defendant knew the transaction was

19  designed in whole or in part to conceal or disguise the nature,

20  location, source, ownership or control of the proceeds as

21  specified of the unlawful activity, Section 1956 (b)(2), or

22  that the defendant knew the transaction was designed to and the

23  defendant acted with the intent to promote the carrying on of

24  the specified unlawful activity, and that's Section 1956

25  (a)(1).

11

1        THE COURT:  Thank you, Mr. Bosworth.

2   BY THE COURT:

3   Q.  Mr. Bristol, did you hear what Mr. Bosworth said?

4   A.  Yes, your Honor.

5   Q.  You understand the government would have to prove each and

6   every part or element of the charge beyond a reasonable doubt

7   at a trial?

8   A.  Yes, your Honor.

9   Q.  You understand by statute the maximum possible penalties

10  for the crime to which you are entering a plea of guilty are:

11        Five years imprisonment, a maximum fine of the

12  greatest of $250,000 or twice the gross gain to you from your

13  crime or twice the gross loss to others from your crime, plus a

14  $100 mandatory assessment and a maximum term of three years of

15  supervised release after your term of imprisonment.

16        Do you understand those maximum statutory penalties?

17  A.  Yes, your Honor.

18  Q.  Are you sure?

19  A.  I am --

20  Q.  Do you want to talk with Ms. Kellman?

21  A.  May I, please?

22  Q.  Yes.

23        (Pause)

24  A.  Yes, your Honor, I have had that clarified by my counsel.

25  I understand it is up to five years with three years probation

1    and the fine.

2            THE COURT:  Mr. Bosworth, are those statutory maximum

3    penalties accurate?

4            MR. BOSWORTH:  Yes, your Honor.

5    BY THE COURT:

6    Q.  Mr. Bristol, the supervised release I referred to means you

7    will be supervised for a period of years after you are released

8    from prison should you go to prison.  There are conditions you

9    must obey.  If you don't you could be sent to prison without a

10   jury trial.

11           Do you understand that?

12   A.  Yes, your Honor.

13   Q.  In addition to these maximum penalties, you understand that

14   as part of your sentence I must order you to pay restitution to

15   any victims of your crimes?

16   A.  Yes, your Honor.

17   Q.  You understand that if you are a United States citizen and

18   I accept your guilty plea and adjudge you guilty, that

19   adjudication may deprive you of valuable civil rights, such as

20   the right to vote, the right to hold public office, the right

21   to serve on a jury and the right to possess any kind of

22   firearm, and if you are not a citizen of the United States and

23   I accept your guilty plea and adjudge you guilty that

24   adjudication will subject you to deportation and/or deprive you

25   of the right to apply for United States citizenship or to

1    re-enter this country.

2           Do you understand that?

3    A.   I understand, yes, your Honor.

4    Q.   You understand if you are sentenced to prison parole no

5    longer exists so parole cannot get you out of prison any

6    earlier?

7    A.   I understand, your Honor.

8    Q.   Mr. Bristol, in determining your sentence the court will

9    consider both the factors contained in the advisory sentencing

10   guidelines and the factors set forth in 18 United States Code

11   Section 3553(a).

12          The 18 United States Code, Section 3553(a) factors

13   include the nature and circumstances of the offense and a

14   history and characteristics of the defendant, the need for the

15   sentence imposed to reflect the seriousness of the offense, to

16   promote respect for the law, to provide just punishment for the

17   offense, to discourage others from committing crimes, to

18   protect the public from further crimes of the defendant and to

19   provide the defendant with needed educational or vocational

20   training, medical care or other correctional treatment in the

21   most effective manner.

22          These factors also include the kinds of sentences

23   available, the sentencing guidelines which are now advisory,

24   any pertinent policy statements issued by the Sentencing

25   Commission, the need to make sure defendants with similar

1  records who have been found guilty of similar conduct get

2  similar sentences and the need to provide restitution to any

3  victims of the offense.

4          Do you understand these factors?

5  A.   Yes, your Honor.

6  Q.   You understand although there is a calculation of the

7  guideline range contained in the plea agreement, the court will

8  not be able to determine your guideline sentence range until

9  after a presentence report has been completed by the Probation

10  Department and you and the government have had a chance to

11  challenge any of the facts reported by the Probation

12  Department?

13  A.   Yes, your Honor, I understand.

14  Q.   Do you further understand even after it is determined what

15  guideline range applies in your case, it is advisory only and

16  just one of the factors I just told you the court will consider

17  in determining your sentence?

18  A.   Yes, your Honor.

19  Q.   You understand if your attorney or anyone else has

20  attempted to estimate or predict what your sentence will be,

21  that their estimate or prediction could be wrong?

22  A.   Yes, your Honor.

23  Q.   No one, not even your attorney or the government, can nor

24  should give you any assurance of what your sentence will be

25  since, as I have just said, that sentence cannot be determined

1    until after the presence report is completed and I have

2    ruled on the challenges to the report, if any, and I have

3    determined pursuant to the advisory sentencing guidelines and

4    the other factors contained in 18 United States Code, Section

5    3553(a), what the appropriate sentence is.

6              Do you understand this?

7    A.  Yes, your Honor.

8    Q.  You also fully understand even if your sentence is

9    different from what your attorney or anyone else told you it

10   might be or if it is different from what you expect, you will

11   still be bound to your guilty plea and you will not be allowed

12   to withdraw your plea of guilty?

13   A.  I understand, your Honor.

14   Q.  Now, while the court is not a party to this agreement, I

15   have been given a letter plea agreement which I marked as Court

16   Exhibit 1 in this matter of today's date.

17             I have turned it to the signature page.  I am handing

18   it to my law clerk and I am asking her to take it down to Mr.

19   Bristol.

20             (Handing to the defendant)

21             Mr. Bristol, is that your signature on the agreement?

22   A.  Your Honor, it is my signature.

23   Q.  Did you read the agreement before you signed it?

24   A.  I read the agreement.  I also discussed it with my

25   attorney.

1    Q.  Did you understand the agreement before you signed it?

2    A.  Yes, I understood the agreement before you signed it.

3    Q.  Mr. Bristol, does this letter agreement set forth your

4    complete and total understanding of the entire agreement signed

5    by the government, your attorney and you?

6    A.  Yes, your Honor.

7    Q.  Does this plea agreement contain everything you understand

8    about the government's role and your role regarding your plea

9    and sentence?

10   A.  Yes, your Honor.

11   Q.  Has anything been left out?

12   A.  No that I know of, your Honor.  No.  Excuse me.

13   Q.  No, no.  Do you want to take a moment to look at it again

14   to make sure everything you understand is in there and nothing

15   has been left out?  You have the right to do that.

16   A.  I, I believe it is safe for me to retract my prior answer

17   and respectfully say no, your Honor.  I apologize.

18   Q.  Do not apologize.  This is something very serious that you

19   are doing today and I want to make sure you understand and

20   everything has been covered.

21   A.  I understand.  My answer is no, your Honor.

22   Q.  Do you understand according to the plea agreement you are

23   giving up your right to appeal, whether directly or under Title

24   28, United States Code, Section 2255 and/or 2241 any sentence I

25   impose as long as that sentence is within or below the

1    guideline range set forth in the plea agreement?

2    A.   Yes, your Honor.

3    Q.   Mr. Bristol, has anyone offered you any inducements or

4    threatened you or forced you either to plead guilty or to enter

5    into this plea agreement?

6    A.   No, your Honor.

7         THE COURT:  Ms. Kellman, do you know of any valid

8    defense that would prevail at trial or do I know of any reason

9    why your client should not be permitted to plead guilty?

10        MS. KELLMAN:  No, your Honor.

11   BY THE COURT:

12   Q.   Mr. Bristol, will you please tell me what you did in

13   connection to the crime to which you are entering a plea of

14   guilty?

15   A.   During 2010, I agreed to allow another person to wire funds

16   in and out of my attorney escrow account thereby facilitating

17   his fraudulent scheme to disguise the nature, location, source,

18   ownership and control of funds that had been entrusted to him

19   by his client and investors and stolen by him.

20        At the time the funds were wired I knew that a

21   substantial portion of the funds were the proceeds of his

22   unlawful activity.  Throughout this time I often met with this

23   individual at his Manhattan office.

24   Q.   At the time that you did these things, Mr. Bristol, did you

25   know that what you were doing was wrong and illegal?

18

1    A.   Yes, your Honor.

2              THE COURT:   Mr. Bosworth, would you please summarize

3    the government's evidence against Mr. Bristol if this case were

4    to go to trial?

5              MR. BOSWORTH:   Yes, your Honor.

6              Through evidence, including bank records, the

7    statements of witnesses as well as Mr. Bristol's own

8    statements, the government would be prepared to prove as

9    follows:

10             At all times relevant to this information the

11   defendant was a partner at a prominent law firm and worked in

12   their office in Manhattan.   His clients included Kenneth Starr

13   as well as Starr & Company, which collectively refers to a

14   financial planning firm and an investment advising firm that

15   Kenneth Starr controlled, and his offices were located in

16   midtown, Manhattan.

17             From at least 2008 to 2010, Mr. Starr systematically

18   defrauded his clients of millions of dollars.   One method by

19   which he committed this fraud was to steal and misappropriate

20   millions of dollars from his clients, to transfer them via wire

21   transfer to one of two attorney escrow accounts controlled by

22   Mr. Bristol.   Starr would lie to the clients about the purpose

23   for which the money had been transferred, sometimes, for

24   example, telling them the money was to be bundled for an

25   investment, and then Starr would direct Mr. Bristol to wire

19

1   funds out of the attorney escrow account for Starr's benefit

2.  and not for the purposes that Starr had explained to the

3   clients.

4       So among other things at Starr's direction Mr. Bristol

5   agreed to wire money that had been stolen from Starr's clients

6   to pay for a luxury condominium on the Upper East Side of

7   Manhattan for Mr. Starr, to pay the operating expenses of Starr

8   & Company, to pay a legal settlement that Starr owed to a

9   former Starr client and at least one case to pay money back

10  from one client with money that was stolen from another client.

11      From at least by 2009 through May 2010, Mr. Bristol

12  knowingly agreed with Starr to conduct this activity.  Mr.

13  Bristol allowed Mr. Starr to transfer nearly $19 million into

14  attorney escrow accounts controlled by Mr. Bristol that

15  constituted the proceeds of the fraud and then at Starr's

16  direction Mr. Bristol transferred nearly $19 million out of the

17  attorney escrow account to the benefit of Mr. Starr, the

18  benefit of Mr. Starr's family and Mr. Starr's company.

19      Mr. Bristol did so not to gain money directly for

20  himself, but in order to maintain a book of business that he

21  felt he needed to maintain in order to keep his position as a

22  partner at the prominent law firm.

23      The government would also prove in this way that Mr.

24  Bristol engaged in these financial transactions both to promote

25  Mr. Starr's underlying fraud as well as to conceal and disguise

1   the nature, location, source, ownership and control of Starr's

2   fraud.

3           Respectfully, your Honor, the only question that we

4   would ask the court to consider presenting to Mr. Bristol is

5   just to ask whether he committed the overt acts that are

6   alleged in the information.  Otherwise, we think the plea, his

7   allocation was sufficient.

8           THE COURT:  I will do so.

9   BY THE COURT:

10  Q.  Mr. Bristol, turning to page 2 of the information, would

11  you talk to me about the overt acts listed there?

12  A.  Yes, I see the overt acts.

13          On or about April 26, 2010, Jonathan Bristol, I, the

14  defendant, received into an attorney escrow account controlled

15  $1 million that Kenneth Starr had stolen from a certain former

16  executive of a talent agency.  I am did commit that overt act.

17          On or about April 26, 2010 Jonathan Bristol, the

18  defendant, transferred $1 million dollars from an attorney

19  escrow account he controlled to the bank account of a certain

20  actress.

21  Q.  And you acknowledge you did both of those things?

22  A.  I acknowledge, yes, your Honor.

23  Q.  Did you hear everything that Mr. Bosworth said?

24  A.  Yes, your Honor.

25  Q.  Mr. Bristol, how do you now plead to the charge, guilty or

1  not guilty?

2  A.   I plead guilty.

3  Q.   Are you pleading guilty because you are guilty?

4  A.   Yes.

5  Q.   Are you pleading guilty voluntarily and of your own free

6  will?

7  A.   Yes, your Honor.

8  Q.   Because you acknowledge that you are guilty as charged in

9  the information, because you know your rights and are waiving

10 them, because your plea is entered knowingly and voluntarily

11 and is supported by an independent basis in fact containing

12 each of the essential elements of the offense, I accept your

13 guilty plea and adjudge you guilty of the offense to which you

14 have pled.

15      The Probation Department will next prepare a

16 presentence report to assist me in sentencing you.  You will be

17 interviewed by the Probation Department.  It is important that

18 the information you give the probation officer be truthful,

19 accurate and complete.  The report is, accordingly, important

20 in my decision as to what your sentence will be.

21      You and your attorney have the right and will have an

22 opportunity to examine the report, challenge or comment upon it

23 and to speak on your behalf before sentencing.

24      I wish to advise defense counsel, the defendant and

25 the government that substantive detailed information and

1    arguments, if any, are to be made in writing on the following

2    schedule.  This affords the court the opportunity to consider

3    them while determining the appropriate sentence.

4         Failure to comply with this schedule will be deem a

5    waiver of such arguments or information at the time of

6    sentencing and there shall be no extension.

7         The final presentence report shall be sent to the

8    parties and the court by August 15, 2011 at 4:00 p.m.

9         If either party is making a written submission, it

10   must be sent to the other side and the court by August 29, 2011

11   at 4:00 p.m.

12        Responses must be submitted to the initiating party

13   and the court by September 12, 2011 at 4:00 p.m.

14        The date for sentencing is set for September 26, 2011

15   at 10:30 a.m.

16        THE COURT:  Mr. Bosworth, what is the bail status of

17   the defendant?

18        MR. BOSWORTH:  Your Honor, the defendant is out on

19   conditions of bail a substantial personal recognizance bond

20   that has also been secured with certain assets of his bank

21   accounts and pension funds and the like, as well as certain

22   travel restrictions.

23        The government does not intend to make any application

24   for a modification of the conditions of bail.

25        THE COURT:  All right, Mr. Bosworth, thank you.

1        Mr. Bristol, do you understand if you fail to return

2   to my courtroom for sentencing on the day and time set, unless,

3   of course, you are advised by your counsel, Ms. Kellman, that

4   the date has been adjourned, that you will be guilty of a

5   criminal act for which you could be sentenced to imprisonment

6   separate, apart from and in addition to any other sentences you

7   might receive for the crime to which you have just pled guilty?

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  You further understand all the conditions

10  on which you were released up until now continue to apply and

11  that the consequence of violation of any of those conditions

12  could be severe?

13       THE DEFENDANT:  Yes, your Honor.

14       THE COURT:  Then I will see you on the date of

15  sentencing.

16       Mr. Bosworth.

17       MR. BOSWORTH:  Your Honor, I apologize.  Two

18  questions.

19       The first thing is I think the court would want the

20  submission of the proposed restitution order with the

21  government's first memorandum on August 29.

22       The defendant and the government have agreed that the

23  defendant would pay restitution in the amount of

24  $18,860,282.69.

25       We will have a proposed restitution order for your

1  Honor to consider.  Should we submit it on this schedule?

2           THE COURT:  The later submission date is fine.

3           MR. BOSWORTH:  Lastly, I think your Honor said the

4  plea agreement is marked Court Exhibit 1.  I'm not sure I see

5  it now.

6           THE COURT:  You mean I actually didn't write Court

7  Exhibit 1 on it?

8           MR. BOSWORTH:  Just in case there is any question

9  later that this is the document.

10          THE COURT:  Hand it up, Mr. Bosworth.

11          (Handing to the court)

12          (Pause)

13          And would you make copies and distribute them both to

14 Ms. Kellman and to the court since it is now officially Court

15 Exhibit 1 of today's date in this matter?

16          MR. BOSWORTH:  Yes, I will.  Thank you, your Honor.

17          THE COURT:  Anything else?

18          MS. KELLMAN:  I have one brief matter.

19          May I just have one minute with the government?

20          THE COURT:  Certainly.

21          (Pause)

22          MS. KELLMAN:  Your Honor, we have a brief request for

23 a bail modification.  My client's daughter -- he lives in New

24 Jersey, his daughter goes to Laffayette College in

25 Pennsylvania --

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

1          THE DEFENDANT:  Right over the Delaware River.

2          MS. KELLMAN:  From time to time he has need to take

3    her back to school and pick her up for the holiday and the like

4    and each time he is required to get specific permission from

5    the pretrial OFFICE people.

6          I discussed the modification of the geographical

7    boundaries to include his trips back and forth from Laffayette

8    College, Pennsylvania, and the government has no objection to

9    that modification.

10          THE COURT:  I grant that modification.

11          MS. KELLMAN:  The other thing is I ask the court's

12    permission to get today's minutes.

13          THE COURT:  That always happens, doesn't it Guido?

14          THE REPORTER:  Yes, it does, your Honor.

15          THE COURT:  Yes.  Anything else?

16          MS. KELLMAN:  No, your Honor.

17          MR. BOSWORTH:  No, your Honor.

18          THE COURT:  All right.  This matter is adjourned.

19                        - -

20

21

22

23

24

25