USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/15/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

KENNETH IRA STARR, STARR INVESTMENT
ADVISORS, LLC, STARR & COMPANY, LLC, AND
JONATHAN S. BRISTOL

Defendants,

DIANE PASSAGE AND COLCAVE, LLC

Relief Defendants.

10 CIV 4270 (SHS)

# 12,2021

---

### JUDGMENT AS TO DEFENDANT KENNETH IRA STARR

The Securities and Exchange Commission having filed a Complaint and Defendant
Kenneth Ira Starr ("Defendant" or "Starr") having entered a general appearance; consented to the
Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of
this Final Judgment; waived findings of fact and conclusions of law; and waived any right to
appeal from this Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND·DECREED that Defendant and
Defendant's agents, servants, employees, attorneys, and all persons in active concert or
participation with them who receive actual notice of this Judgment by personal service or
otherwise are permanently restrained and enjoined from violating Sections 206(1) and 206(2)  of

the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)],

by using the mails or any means or instrumentality of interstate commerce, directly or indirectly:

    (a) to employ any device, scheme or artifice to defraud any client or prospective

        client; or

    (b) to engage in any transaction, practice or courses of business which operates as a

        fraud or deceit upon any client or prospective client.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant

is liable for disgorgement in the amount of $9,300,000, representing profits gained and/or losses

avoided as a result of the conduct alleged in the Complaint, plus prejudgment interest thereon in

the amount of $354,197.65 for a total of $9,654,197.65. This disgorgement plus prejudgment

interest is deemed satisfied by the entry of a forfeiture order against Defendant in the amount of

$30,112,782.69 in the criminal case before the United States District Court for the Southern

District of New York, titled *United States v. Kenneth Starr, et al.*, 10 CR 520 (S.D.N.Y.) (SAS)

("*United States v. Starr*").

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that based on

the sentence Starr received pursuant to his guilty plea in *United States v. Starr*, the Court is not

ordering Starr to pay a civil penalty. If at any time following the entry of this Final Judgment the

Commission obtains information indicating that Starr knowingly provided materially false or

misleading information or materials to the Commission or in a related proceeding, the

2

Commission may, at its sole discretion and without prior notice to Starr, petition the Court for an

order requiring Starr to pay a civil penalty. In connection with any such petition and at any

hearing held on such a motion: (a) Starr will be precluded from arguing that he did not violate

the federal securities laws as alleged in the Complaint; (b) Starr may not challenge the validity of

this Final Judgment or his consent hereto, dated August 17, 2012 and filed herewith (the

"Consent"); (c) the allegations of the Complaint, solely for the purposes of such motion, shall be

accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in

the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative

testimony, and documentary evidence without regard to the standards for summary judgment

contained in Rule 56(c) of the Federal Rules of Civil Procedure. Under these circumstances, the

parties may take discovery, including discovery from appropriate non-parties.

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is

incorporated herein with the same force and effect as if fully set forth herein, and that Defendant

shall comply with all of the undertakings and agreements set forth therein.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

3

VI.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Judgment forthwith and without further notice.

Dated: November 15, 2012

_____
HONORABLE SIDNEY H. STEIN
UNITED STATES DISTRICT JUDGE

**THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON** _____

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH IRA STARR, STARR INVESTMENT ADVISORS, LLC, STARR & COMPANY, LLC, AND JONATHAN S. BRISTOL<br><br>Defendants,<br><br>DIANE PASSAGE AND COLCAVE, LLC<br><br>Relief Defendants. | 10 CIV 4270 (SHS) |

## CONSENT OF KENNETH IRA STARR

1.      Defendant Kenneth Ira Starr ("Defendant") waives service of a summons and the Complaint in this action, enters a general appearance, and consents to the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action.  Specifically, in *United States v. Kenneth Starr, et al.*, 10 CR 520 (S.D.N.Y.) (SAS) ("*United States v. Starr*"), Defendant pleaded guilty to one count of wire fraud [18 U.S.C. § 1343], one count of money laundering [18 U.S.C. § 1956], and one count of investment advisor fraud [15 U.S.C. § 80b-6].

3.      In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent.  This Consent shall remain in

full force and effect regardless of the existence or outcome of any further proceedings in *United States v. Starr*.

    4.    Defendant hereby consents to the entry of the Judgment in the form attached hereto (the "Judgment") and incorporated by reference herein, which, among other things:

    (a) permanently restrains and enjoins Defendant from any violations of Sections 206(1) or 206(2) of the Advisers Act [15 U.S.C. § 80b-6(1) and (2)];

    (b) orders Defendant to pay disgorgement in the amount of $9,300,000, representing funds misappropriated from his clients as alleged in the Complaint, plus prejudgment interest thereon in the amount of $354,197.65, for a total of $9,654,197.65, but provides that Defendant's disgorgement obligations are deemed satisfied by the entry of the May 6, 2011 Order of Restitution against Defendant in the amount of $30,112,782.69 in the criminal case before the United States District Court for the Southern District of New York, titled *United States v. Kenneth Starr, et al.*, 10 CR 520 (S.D.N.Y.) (SAS) ("*United States v. Starr*"); and

    (c) does not order Defendant to pay a civil penalty based upon the sentence he received pursuant to his conviction in *United States v. Starr*.

    5.    Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

    6.    Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Judgment.

    7.    Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any

member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.      Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

9.      Defendant will not oppose the enforcement of the Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.     Defendant waives service of the Judgment and agrees that entry of the Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Judgment.

11.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a

3

member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the Complaint in this action.

12.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant acknowledges the guilty plea for related criminal conduct described in paragraphs 2 and 3 above, and agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes,

4

Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14.     Defendant agrees that the Commission may present the Judgment to the Court for signature and entry without further notice.

15.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Judgment.

Dated: 08|17|12

Kenneth Ira Starr
Kenneth Ira Starr

On August 17, 2012, Kenneth Ira Starr, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

_____
Notary Public
Commission expires:

Approved as to Form:

Flora Edwards
Attorney for Kenneth Ira Starr

FLORA EDWARDS
Notary Public, State of New York
No. 02ED5067131
Qualified in New York County
Commission Expires October 15, 20___

5

1

09A8STAP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                    10 Cr. 520 (SAS)

5   KENNETH STARR,

6              Defendant.

7   ------------------------------x

8                                   September 10, 2010
                                    11:20 a.m.
9
    Before:
10
                    HON. THEODORE H. KATZ
11
                                    Magistrate Judge
12
                         APPEARANCES
13
    PREET BHARARA
14       United States Attorney for the
         Southern District of New York
15   MICHAEL BOSWORTH
    WILLIAM HARRINGTON
16       Assistant United States Attorneys

17   FLORA EDWARDS
         Attorney for Defendant
18

19   Also present:

20       MICHAEL KITSIS
         HOPE KORENSTEIN
21          Assitant District Attorneys
            New York County District Attorney's Office
22

23

24

25

              SOUTHERN DISTRICT REPORTERS, P.C.         (212) 805-0300

09A8STAP

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3   the record.

4          MR. BOSWORTH:  Good morning, your Honor.  Michael

5   Bosworth and William Harrington for the government.  With us at

6   counsel table are Assistant District Attorneys Michael Kitsis

7   and Hope Korenstein of the New York County District Attorney's

8   Office.

9          MS. EDWARDS:  Good morning, your Honor.  Flora Edwards

10  for the defendant, Kenneth Starr, and Mr. Starr is here with me

11  today.

12         THE COURT:  Good morning.

13         This matter was referred by Judge Scheindlin?

14         MR. BOSWORTH:  Yes, sir.

15         THE COURT:  Mr. Starr is here to enter a plea of

16  guilty to Counts 9, 21 and 22 of the indictment?

17         MS. EDWARDS:  That's correct, your Honor.

18         THE COURT:  Mr. Starr, Count 9 of the indictment in

19  your case charges you with wire fraud, in violation of Title 18

20  of the United States Code, Section 1343.  That offense carries

21  a maximum statutory penalty of 20 years in prison, a maximum

22  fine of $250,000 or twice the monetary gain or loss resulting

23  from the offense, whichever is greater, a maximum term of three

24  years on supervised release, and a mandatory special assessment

25  of $100.

09A8STAP

1              Count 21 of the indictment charges you with money

2      laundering, in violation of Title 18 of the United States Code,

3      Section 1956(a)(1).  That offense carries a maximum statutory

4      penalty of 20 years in prison, a maximum fine of $500,000 or

5      twice the monetary gain or loss resulting from the offense,

6      whichever is greater, a maximum term of three years on

7      supervised release, and a mandatory special assessment of $100.

8              Count 22 charges you with investment adviser fraud, in

9      violation of Title 15 of the United States Code, Sections 80b-6

10     and 80b-17.  That offense carries a maximum statutory penalty

11     of five years in prison, a maximum fine of $10,000 or twice the

12     monetary gain or loss resulting from the offense, whichever is

13     greater, a maximum term of three years on supervised release,

14     and a mandatory special assessment of $100.

15             In addition, you would be subject to an order of

16     restitution.

17             The total maximum term of imprisonment you face is 45

18     years in prison.

19             You should also be aware that if you are sentenced to

20     time on supervised release and were to violate the terms of

21     your supervised release, you could be sentenced to additional

22     time in prison.

23             You have the right to plead not guilty to these

24     charges, and if you do so, you have the right to a jury trial,

25     and if convicted, the right to be sentenced by a United States

09A8STAP

1    district judge.  If you choose to, however, you can enter a

2    plea of guilty to these charges.  If you consent, you can enter

3    your plea before me.  I am a United States magistrate judge.

4    If I were to determine that your plea was entered knowingly and

5    voluntarily and there is a factual basis for your plea, I would

6    then recommend to the district judge, Judge Scheindlin, that

7    she accept your plea of guilty, and if she does so, your

8    sentencing would take place before her.

9            Do you understand what I have just explained?

10           THE DEFENDANT:  Yes, I do, your Honor.

11           THE COURT:  Have you read and signed this form

12   consenting to enter your plea before a United States magistrate

13   judge?

14           THE DEFENDANT:  Yes, I have, your Honor.

15           THE COURT:  I accept the consent.

16           Before I can accept your plea, Mr. Starr, I have to

17   give you some information and ask you certain questions so that

18   I can be assured that you understand what rights you are giving

19   up by pleading guilty and that your plea is made voluntarily

20   and there is a factual basis for your plea.  The answers to my

21   questions are to be given under oath.  That means you can be

22   prosecuted for perjury if you give false statements.  If you

23   don't understand any of my questions, please let me know and I

24   will clarify them.

25           Would you raise your right hand?

09A8STAP

```
 1                (Defendant sworn)
 2           THE COURT:  Would you state your full name?
 3           THE DEFENDANT:  Kenneth Ira Starr.
 4           THE COURT:  How old are you, Mr. Starr?
 5           THE DEFENDANT:  66.
 6           THE COURT:  How much education have you had?
 7           THE DEFENDANT:  Through college, law school, master's
 8   in tax law.
 9           THE COURT:  Are you currently under the care of a
10   doctor or a psychiatrist?
11           THE DEFENDANT:  No, I am not.
12           THE COURT:  Have you ever been treated for alcoholism
13   or drug addiction?
14           THE DEFENDANT:  No, I have not.
15           THE COURT:  Have you been able to understand
16   everything I have said so far?
17           THE DEFENDANT:  Yes, I have.
18           THE COURT:  Are you feeling physically all right as
19   you stand here today?
20           THE DEFENDANT:  Yes, I am.
21           THE COURT:  Have you seen a copy of the indictment in
22   your case?
23           THE DEFENDANT:  Yes, I have.
24           THE COURT:  Have you read it or would you like me to
25   read it to you?
```

09A8STAP

1          THE DEFENDANT:  I have read it.

2          THE COURT:  Do you understand what it charges you with

3    doing?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  Have you had an opportunity to discuss the

6    charges in the indictment with Ms. Edwards and how you wish to

7    plead today?

8          THE DEFENDANT:  Yes, I have.

9          THE COURT:  Are you satisfied with Ms. Edwards's

10   services?

11         THE DEFENDANT:  Very much so.

12         THE COURT:  Are you prepared to enter a plea to Counts

13   9, 21 and 22 in the indictment?

14         THE DEFENDANT:  I am.

15         THE COURT:  What plea do you wish to enter?

16         THE DEFENDANT:  Guilty.

17         THE COURT:  Do you understand that you have the right

18   to plead not guilty to these charges, and that if you do so,

19   you have the right to a jury trial?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  Do you understand that if you chose to go

22   to trial, the burden would be on the government to prove your

23   guilt beyond a reasonable doubt and you would be presumed

24   innocent unless and until the government did prove your guilt

25   beyond a reasonable doubt?

09A8STAP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that if you chose to go

3    to trial, you would have the right to be represented by an

4    attorney, and if necessary, an attorney would be appointed to

5    represent you?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that at a trial, your

8    attorney would have the right to cross-examine any witnesses

9    who were called to testify against you, and you and your

10   attorney would have the right to call witnesses to testify on

11   your behalf and to compel the attendance of witnesses if

12   necessary?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you understand that at a trial, you

15   yourself would have the right to testify, but you would not be

16   required to testify or to incriminate yourself in any fashion?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you understand that if you plead guilty

19   to these charges today, there will be no trial and the next

20   stage in this proceeding will be your sentencing by Judge

21   Scheindlin?

22         THE DEFENDANT:  Yes.

23         THE COURT:  You heard me describe what the maximum

24   statutory penalties are for the offenses set forth in Counts 9,

25   21 and 22?

8

09A8STAP

1          THE DEFENDANT:  Yes, I have.

2          THE COURT:  Have you had a chance to speak to Ms.

3     Edwards about how the United States sentencing guidelines apply

4     to your case?

5          THE DEFENDANT:  Yes, I have.

6          THE COURT:  Do you understand that although Judge

7     Scheindlin is obligated to consider the United States

8     sentencing guidelines, along with other information, in

9     deciding what a reasonable sentence would be in your case, she

10    is not obligated to actually sentence you under the guidelines?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  Do you understand that even if Judge

13    Scheindlin chooses to sentence you under the guidelines, under

14    certain circumstances, she has the discretion to impose a

15    sentence that is even more lenient or more severe than is

16    called for in the guidelines?

17         THE DEFENDANT:  Yes, I do.

18         THE COURT:  Do you understand that the sentence to be

19    imposed lies solely in Judge Scheindlin's discretion?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  Have any threats been made to you by

22    anyone which are causing you to plead guilty today?

23         THE DEFENDANT:  No.

24         THE COURT:  Have any promises been made to you about

25    the sentence you will receive?

9

09A8STAP

1          THE DEFENDANT:  No.

2          THE COURT:  Did you enter into a plea agreement with

3    the government?

4          THE DEFENDANT:  Yes, I did.

5          THE COURT:  Have you read and signed the agreement?

6          THE DEFENDANT:  Yes, I have.

7          THE COURT:  Have you discussed it with Ms. Edwards?

8          THE DEFENDANT:  Yes, I have.

9          THE COURT:  Do you understand what it says?

10         MS. EDWARDS:  If I may, your Honor.  I just wanted to

11   add one thing on the plea agreement.  On page 4 of the

12   agreement, it requires Mr. Starr to waive his right to file a

13   motion pursuant to 2241.  I have advised Mr. Starr that the

14   preclusion relates only to conviction and sentence and does not

15   relate to conditions of confinement should that become

16   necessary.

17         THE COURT:  That's true.

18         Mr. Bosworth, can you just outline the more

19   significant terms of the agreement?

20         MR. BOSWORTH:  Yes, your Honor.

21         Under the stipulated guidelines range, the base

22   offense level is 7.  22 levels are added because the offenses,

23   which are grouped, collectively involved a loss of more than

24   $20 million, but less than $50 million.  Because the offenses

25   involved a violation of securities law, and at the time of the

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

10

09A8STAP

1    offense the defendant was an investment adviser, four levels

2    are added.  Because the defendant was convicted of the money

3    laundering charge, another two levels are added.  And because

4    of his timely acceptance of responsibility, three levels are

5    reduced.  Ultimately, because the defendant is in Criminal

6    History Category I and has a guidelines offense level of 32,

7    there is a stipulated guidelines range of 121 to 151 months'

8    imprisonment.

9         Additionally, the agreement provides that neither

10   party will seek any departure from the guidelines.  The

11   agreement provides that either party may, however, seek a

12   sentence outside of the stipulated guidelines range, among

13   other things.

14        Furthermore, as relevant, there is an appeal waiver

15   provision.  Pursuant to the appeal waiver, it's agreed that the

16   defendant will not file a direct appeal or bring any collateral

17   challenge, including the Section 2241 motion, to the extent

18   that motion challenges conviction or sentence, or a 2255 motion

19   that challenges any conviction or any sentence within or below

20   the guidelines range that is stipulated to of 121 to 151

21   months.  The government agrees not to appeal any sentence

22   that's within or above that stipulated guidelines range.

23        THE COURT:  So does the stipulation apply to any

24   appeal relating to the conviction, not just sentence?

25        MR. BOSWORTH:  Yes, your Honor.

11

09A8STAP

1          MS. EDWARDS:  That's correct, your Honor.

2          MR. BOSWORTH:  Then there is one final appeal waiver

3     provision.  Pursuant to this agreement, you will note, your

4     Honor, that the parties agree that the government may seek

5     restitution in an amount up to and including $50 million.  The

6     parties have not reached an agreement about what precise figure

7     restitution would be.

8          The same applies to the precise amount of funds or

9     assets that could be forfeited, except that the parties do

10    agree, one, that the government has the right to seek to

11    forfeit up to $50 million, and the defendant pursuant to this

12    agreement has agreed to forfeit the luxury condominium at 433

13    East 74th Street, unit 1C.  And so the government could seek

14    forfeiture of an amount up to $50 million, less the value of

15    the forfeited net proceeds of the sale of that property.

16         So as a result, in the agreement, the defendant agrees

17    not to appeal any restitution amount or forfeiture amount up to

18    and including $50 million, which is at the top of page 5, and

19    the government agrees not to appeal any restitution amount or

20    forfeiture amount that is greater or equal to the value of the

21    forfeited net proceeds of the sale of that apartment.

22         THE COURT:  Is that all consistent with your

23    understanding, Ms. Edwards?

24         MS. EDWARDS:  Yes, it is, your Honor.

25         THE COURT:  Mr. Starr, do you understand the terms of

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

12

09A8STAP

1   the agreement?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  Do you understand that although you and

4   your attorney have reached some understanding with the

5   government about the sentencing range you would face under the

6   sentencing guidelines, that that is not binding on Judge

7   Scheindlin and that the sentence to be imposed lies solely at

8   her discretion?

9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  Do you understand that even if Judge

11   Scheindlin were to impose a more severe sentence than the 151

12   months, which is the top of the range stipulated to, that would

13   not be a basis for your withdrawing your plea of guilty?

14          THE DEFENDANT:  Yes, I do.

15          THE COURT:  Do you understand that in pleading guilty

16   and entering into this agreement, you are waiving your right to

17   appeal your sentence and conviction, and you are not going to

18   seek to challenge the sentence, certainly if it is no greater

19   than 151 months in prison, is that correct?

20          THE DEFENDANT:  That's correct.

21          THE COURT:  Do you still wish to plead guilty to

22   Counts 9, 21 and 22 in the indictment?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Is your plea made voluntarily and of your

25   own will?

13

09A8STAP

1          THE DEFENDANT:  Yes, it is.

2          THE COURT:  Did you commit the offenses set forth in

3  Counts 9, 21 and 22 of the indictment?

4          THE DEFENDANT:  Yes, I did.

5          THE COURT:  Mr. Bosworth, would you identify the

6  elements of those offenses which the government would have to

7  prove at trial beyond a reasonable doubt?

8          MR. BOSWORTH:  Yes, your Honor.

9          The elements of the wire fraud offense are as follows.

10  The government would be required to prove beyond a reasonable

11  doubt that on or about January 5, 2010, in the Southern

12  District of New York:

13          First, that there was a scheme or artifice to defraud

14  or to obtain money or property by materially false and

15  fraudulent pretenses, representations or promises as alleged in

16  the indictment.

17          Second, that the defendant knowingly and willfully

18  participated in that scheme or artifice to defraud with

19  knowledge of its fraudulent nature and with specific intent to

20  defraud.

21          Third, that in the execution of that scheme, the

22  defendant used or caused the use of an interstate wire,

23  specifically, the wire that's referred to in the indictment on

24  or about January 5, 2010.

25          Should I go on to the next offense, your Honor?

14

09A8STAP

1          For the money laundering count, Count 21, the

2     government would have to prove beyond a reasonable doubt that

3     from at least in or about January 2009, up to and including in

4     or about April 2010:

5          First, the defendant conducted a financial transaction

6     involving property that constitutes the proceeds of specified

7     unlawful activity, namely, the wire fraud scheme of which Count

8     9 is a part.

9          Second, that the defendant knew that the property

10    involved in the financial transaction was the proceeds of some

11    form of unlawful activity.

12         Third, that the purpose of the financial transaction

13    was to conceal or disguise the nature, location, source,

14    ownership or control of the proceeds of specified unlawful

15    activity.

16         Then, last, that the defendant knew that the financial

17    transaction was designed and that its purpose was, in whole or

18    in part, to conceal or disguise the nature, location, source,

19    ownership or control of the proceeds of specified unlawful

20    activity.

21         With respect to Count 22, the investment adviser fraud

22    count, the government would have to prove beyond a reasonable

23    doubt that from in or about 2005, up to and including in or

24    about 2010, in the Southern District of New York, and

25    elsewhere:

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

09A8STAP

1           First, the defendant was an investment adviser.

2           Second, the defendant employed any device, scheme or

3    artifice to defraud any client or prospective client, engaged

4    in any transaction, practice, or course of business which

5    operated as a fraud or deceit upon any client or prospective

6    client, or, while acting as principal for his own account,

7    knowingly sold any security to or purchased any security from a

8    client, or, acting as a broker for a person other than such

9    client, knowingly to effect any sale or purchase of any

10   security for the account of such client, without disclosing to

11   the client in writing before the completion of the transaction

12   the capacity in which he was acting and then obtaining the

13   consent of the client to such transaction, all while acting as

14   an investment adviser.

15           Third, the government would have to prove that the

16   defendant used the mails or any means or instrumentality of

17   interstate commerce, directly or indirectly, to commit the act

18   or acts.

19           Lastly, that the defendant acted unlawfully, willfully

20   and knowingly and with the intent to defraud.

21           THE COURT:  Mr. Starr, can you tell me in your own

22   words now what you did that is causing you to plead guilty

23   first to the wire fraud charge?

24           THE DEFENDANT:  I wrote this out, your Honor.

25           While acting as a financial adviser in Manhattan, a

16

09A8STAP

1   number of my clients entrusted me with their money so that I

2   can pay their bills and invest their funds.

3        From 2009 to 2010, instead of using my clients' money

4   as I had promised, I knowingly used a portion of the money for

5   my own purposes.

6        In diverting this money, I first wired it to an

7   attorney trust account in New Jersey so that the true source of

8   the funds would be concealed when I later used the funds for my

9   own purposes.

10        For example, on or about January 5, 2010, I

11   transferred a million dollars of one client's money to the

12   attorney trust account and later used that for money for my own

13   purposes.

14        Finally, from 2005 through 2010, while acting as an

15   investment adviser in Manhattan, and using the United States

16   mail, on at least one occasion I did not accurately convey the

17   true character of a certain investment that I encouraged my

18   client to make.  For example, I encouraged one client to invest

19   in a company called Wind River, but I did not disclose that it

20   was a loan before the transaction was completed.

21        THE COURT:  When you engaged in these acts, you were

22   located here in Manhattan?

23        THE DEFENDANT:  Yes, I was, your Honor.

24        THE COURT:  With regard to the money laundering, the

25   money that was not lawfully yours that was your clients' and

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

09A8STAP

1    that you were using for your own purposes, that money you

2    transferred to a trust account that you then accessed?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  You knew that it was improper to be using

5    your clients' money for your own purposes?

6              THE DEFENDANT:  Yes, I did, your Honor.

7              MS. EDWARDS:  If I may, your Honor, one moment.

8              THE DEFENDANT:  Your Honor, Ms. Edwards is saying I

9    wasn't clear about it.  The trust account it was transferred to

10   was not mine; it was another attorney's.

11             THE COURT:  Another attorney's?

12             THE DEFENDANT:  Yes.

13             THE COURT:  But you transferred it there for your own

14   purposes?

15             THE DEFENDANT:  That is correct, your Honor.

16             THE COURT:  Are there any other questions you would

17   like me to ask, Mr. Bosworth?

18             MR. BOSWORTH:  Can I just have a moment to talk to Ms.

19   Edwards?

20             THE COURT:  Yes.

21             (Pause)

22             MR. BOSWORTH:  Your Honor, there is only one small

23   question.  After conferring with Ms. Edwards, my understanding

24   is there is no dispute, the government could prove that the

25   wire that's at issue in Count 9, the wire from January 5, 2010,

09A8STAP

1    was in fact an interstate wire.  But I think Ms. Edwards can

2    speak to that.

3              MS. EDWARDS:  That is correct, your Honor.

4              THE COURT:  With regard to Count 22, when you were

5    acting as an investment adviser, when you didn't convey the

6    true character of the investment, the purpose of that was to

7    secure a client's money under fraudulent pretenses?

8              THE DEFENDANT:  I did not make it clear to my client

9    at the time that the money was being obtained from them that in

10   reality they were making a loan and not an investment.  So by

11   not being specific enough and clear enough to them, they

12   believed it was an investment initially and not a loan.

13             THE COURT:  Were you communicating with that client

14   through the mails or telephone?

15             THE DEFENDANT:  I communicated with that client by

16   telephone.

17             THE COURT:  Anything else, Mr. Bosworth, you think is

18   necessary?

19             MR. BOSWORTH:  Just give me one moment, your Honor.

20             (Pause)

21             MS. EDWARDS:  One small clarification on the

22   investment adviser count.

23             THE DEFENDANT:  I am aware that by not disclosing to

24   the client that it was a loan, that that is a fraudulent

25   transaction by having them believe that it was an investment.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

09A8STAP

```
 1          THE COURT:  So that is information that the client

 2   would have wanted to know?

 3          THE DEFENDANT:  Yes.

 4          MR. BOSWORTH:  We would also ask that the Court

 5   inquire whether it was Mr. Starr's intent to defraud by not

 6   disclosing the true character of the investment, as that is an

 7   element of that offense.

 8          THE COURT:  Can you answer that question?

 9          THE DEFENDANT:  Yes.  I would say the answer is yes.

10          MR. BOSWORTH:  We have no other questions.

11          THE COURT:  Mr. Bosworth, do you know of any reason

12   why Mr. Starr should not plead guilty?

13          MR. BOSWORTH:  No.

14          THE COURT:  Ms. Edwards?

15          MS. EDWARDS:  No, I do not.

16          THE COURT:  I am satisfied Mr. Starr is competent to

17   enter a plea of guilty.  I am satisfied that Mr. Starr

18   understands the nature of the charges against him and the

19   consequences of his plea of guilty.  I am satisfied that your

20   plea is entered voluntarily of your own will and that there is

21   a factual basis for your plea.  I am going to therefore

22   recommend to Judge Scheindlin that she accept your plea of

23   guilty to Counts 9, 21 and 22 in the indictment.

24          Has Judge Scheindlin set a sentencing date?

25          MR. BOSWORTH:  Yes, your Honor.  December 15 at 4:30
```

20

09A8STAP

1    p.m.

2            THE COURT:  Between now and then you are going to be

3    asked to meet with the staff of the probation department so

4    that they can prepare a presentence report for the court.  Ms.

5    Edwards has the right to be present at the interview and you

6    will receive a copy of that report as well.

7            Anything further?

8            MR. BOSWORTH:  Nothing from the government.  Thank

9    you.

10           MS. EDWARDS:  Nothing from the defense.  Thank you.

11           (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25